### THE S. C. L. NO. 9.

### LAVINO SHIPPING CO. v. S. C. LOVELAND CO., Inc.

### SAME v. GENERAL CHEMICAL CO. GENERAL CHEMICAL CO. v. S. C. LOVELAND CO., Inc.

Nos. 7289, 7290, 7303.

Circuit Court of Appeals, Third Circuit.

Sept. 24, 1940.

Lewis, Wolff, Gourlay & Hemphill and Otto Wolff, Jr., all of Philadelphia, Pa., for Lavino Shipping Co.

Howard M. Long, Rawle & Henderson, and Thomas Mount, all of Philadelphia, Pa., for Loveland Co.

Thomas H. Middleton, of New York City, Dechert, Smith & Clark, of Philadelphia, Pa., and Hill, Rivkins & Middleton, of New York City, for General Chemical Co.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

Shortly after a lighter belonging to S. C. Loveland Company, Inc., had been loaded by Lavino Shipping Company with a cargo of sulphur which was the property of General Chemical Company, the lighter careened and capsized, dumping the sulphur into the water and damaging the

lighter. Three separate actions in admiralty ensued, viz., (1) a petition by Loveland to limit its liability, in which proceeding General Chemical appeared as a damage claimant, and (2) a libel by Loveland and (3) a libel by General Chemical, each against Lavino Shipping Company, in personam, for the damages occasioned the lighter and the cargo by the capsizing. In the action by Loveland to limit its liability, the seaworthiness of the lighter was directly in issue, while, in the separate actions by Loveland and General Chemical against Lavino, the issues involved were the seaworthiness of the lighter and Lavino's alleged negligence in loading the lighter, which, as the libellants each averred, caused the capsizing.

The three cases were tried together. The trial court entered a final decree in favor of Loveland in the proceeding to limit its liability. From that decree, General Chemical Company, the damage claimant, has appealed at No. 7303. The court also entered an interlocutory decree in favor of Loveland and a like decree in favor of General Chemical in their respective actions against Lavino. From the latter decrees, Lavino has appealed at Nos. 7289 and 7290. Sec. 129 of the Judicial Code, as amended, 44 Stat. 233, 28 U.S.C. A. § 227. The trial court made separate findings and conclusions in each of the cases but filed one opinion covering all three. We shall, therefore, dispose of the three appeals, which were argued together, in this opinion.

The appeals severally raise the question of liability for the damages resulting from the capsizing of the lighter. The answer to this question depends upon the correctness of the findings of the trial court with respect to the seaworthiness of the lighter and Lavino's alleged negligence. No contention is made that the court below misapplied the law to the facts as found. We have, therefore, for review the findings of the trial court that the capsizing of the lighter was due solely to the negligence and carelessness of Lavino in improperly loading the lighter and that the lighter was seaworthy.

■ It is well settled that an appeal in admiralty partakes of a trial de novo and serves to vacate the decree of the district court. Irvine v. The Hesper, 122 U. S. 256, 266, 7 S.Ct. 1177, 30 L.Ed. 1175; Reid v. Fargo, 241 U.S. 544, 548, 36 S.Ct. 712, 60 L.Ed. 1156; Watts, Watts & Co.,

Ltd. v. Unione Austriaca di Navigazione, 248 U.S. 9, 21, 39 S.Ct. 1, 63 L.Ed. 100, 3 A.L.R. 323; T. M. Duche & Sons, Ltd. v. The John Twohy et al., 255 U.S. 77, 79, 41 S.Ct. 251, 65 L.Ed. 511; Standard Oil Co. of New Jersey v. Southern Pac. Co. et al., 268 U.S. 146, 155, 45 S.Ct. 465, 69 L. Ed. 890; Langnes v. Green, 282 U.S. 531, 535, 536, 51 S.Ct. 243, 75 L.Ed. 520. But, it is also settled that the findings of the trial court, when supported by competent evidence, are entitled to great weight. Lillig v. Union Sulphur Co., 9 Cir., 87 F.2d 277, 278; The Piankatank, 4 Cir., 87 F.2d 806, 808; The Mabel, 9 Cir., 61 F.2d 537, 540; Lewis v. Jones, 4 Cir., 27 F.2d 72, 74. Such findings should, therefore, not be set aside on appeal except upon a showing that they are clearly wrong. The Calvert, 4 Cir., 51 F.2d 494, 495; Chesapeake Lighterage & Towing Co., Inc. v. Baltimore Copper Smelting & Rolling Co., 4 Cir., 40 F.2d 394, 395; Merchants' & Miners' Transportation Co. v. Nova Scotia S. S. Corp., 1 Cir., 40 F.2d 167, 168; Lewis v. Jones, supra; Philadelphia & Gulf S. S. Co. v. McCauldin, 3 Cir., 202 F. 735, 737. This rule appropriately recognizes that the trial judge has a peculiar opportunity for appraising the worth of oral testimony by observing the witness' demeanor which the cold print of a record fails to disclose. The Mabel, supra; Malston Co. v. Atlantic Transport Co. et al., 4 Cir., 37 F.2d 570, 571; Lewis v. Jones, supra.

■ The trial court's finding that the lighter was seaworthy is fully supported by the evidence. Of the witnesses called by Loveland, six testified that the lighter was seaworthy. While some of these witnesses were interested in the outcome of the litigation, one in particular, Cox, who appeared to be disinterested, was well informed concerning barges and lighters. His qualifications as an expert were admitted. Cox had had this particular lighter under charter for the lighterage of a valuable and heavy cargo only a few months before the capsizing, and he had made a survey of the lighter in dry dock only two months before. Cox testified unqualifiedly that the lighter was seaworthy at the time of the accident. His testimony had probative force and the trial court accepted it accordingly. To controvert the testimony offered by Loveland, Lavino produced one witness (Schaumburg), who qualified as an expert. Schaumburg, also, was

interested. The survey from which he testified with respect to the lighter's condition was made by him as the employee of Lavino's underwriter. Moreover, his testimony was seriously impaired on cross-examination. Schaumburg had made his first inspection of the lighter after she was in dry dock for repairs following the accident. He admitted that the capsizing of a boat and its remaining in the water bottom upward for several days would tend to loosen the caulking; that he had observed a twist in the boat which would also serve to loosen the caulking; that floating bottom upward would exert heavy pressure on the boat, inside and out, which would blow out the caulking; and that he knew that the experience that the lighter had had in the accident was bound to damage her caulking severely and extensively. Yet, he acknowledged that when he had testified in direct examination with respect to the condition of the lighter's caulking, he had not taken these adverse conditions into consideration. Obviously, Schaumburg's testimony as to the lighter's condition bore little competent relation to her condition prior to the capsizing in so far as the important matter of her caulking was concerned. It was, therefore, not error for the trial court to reject Schaumburg's testimony that the lighter was unseaworthy; and, without that testimony, her seaworthiness was clearly established. For us now to find to the contrary would be no more than an arbitrary exercise of power. But in any event, "The test of seaworthiness is obviously elastic, and it is idle for us to speculate on the written evidence, whatever we might have thought had we seen all the witnesses." Louis-Dreyfus et al. v. Paterson Steamships, Ltd., 2 Cir., 43 F.2d 824, 828, 72 A.L.R. 242.

The evidence, likewise, supports the trial court's finding that the capsizing was due solely to Lavino's negligence. While there is a direct conflict in the testimony with respect to the manner in which the cargo was loaded and the effect which the loading had upon the equilibrium of the lighter, the trial court accepted as credible the testimony of the witnesses for Loveland, especially one Seney, a stevedore employed by Lavino in the loading of the lighter. Seney worked on the deck of the lighter, his duty being to trip the buckets of sulphur as they swung out over the lighter, thus dumping the contents on the deck. According to the testimony accredited by the trial court, 337 tons of the lighter's 357 ton cargo were dumped between the lighter's center line fore and aft and her starboard rail. Lavino provided no one to trim the cargo on the deck of the lighter. The dumping of the sulphur on the starboard side of the deck, which the position of the booms carrying the buckets necessitated, gave the lighter a severe list which brought her starboard quarter deck awash, causing water to run down a hatchway into the hold. This condition became progressively worse until the lighter capsized and floated bottom upward.

Although the evidence amply supports the finding that Lavino's negligent loading caused the lighter to capsize, the appellant Lavino argues that the witness Seney contradicted himself and that, therefore, his testimony should be rejected. At most, the contradictions were not highly material to the fundamental issues. Seney, a longshoreman or stevedore's helper, had worked for both Lavino and Loveland at various times. As the opinion of the trial judge points out, Seney, "like other stevedores, * * * obtained work by the simple expedient of visiting the wharves each day and looking for work until he found it". His apparent confusion, therefore, as to when he had worked for Lavino and when for Loveland did not evince unreliability in his recollection of what he had seen happen concerning the loading of the lighter. His testimony that the sulphur was dumped on the starboard side of the lighter's deck, that the loading caused a severe list which threatened capsizing, and that he and the lighter's master (Gomes) protested the manner of the loading to Lavino's foreman many times, is both clear and consistent throughout. The trial judge believed Seney, and, from our reading of the record, we cannot say that that was error.

Lavino further points to the expert opinion of Schaumburg, who testified that it was physically impossible for the lighter to have capsized from the weight of the sulphur placed on her starboard deck. According to Schaumburg, his opinion was a deduction from the rules of physics consonant with natural laws. From Schaumburg's calculation it would have required 410 tons placed on the starboard side of the lighter's deck to bring that deck awash. The trial judge reasoned, therefore, that it would require twice that weight, or 820 tons, to bring both decks

968

awash. As the rated carrying capacity of the lighter was 600 tons, the trial judge concluded that Schaumburg's calculation was in error and his expert opinion unreliable. We agree with the appellant that the learned trial judge's deduction did not devastate Schaumburg's calculation. The carrying capacity of a vessel is not the amount necessary to bring her decks awash, but the amount she can carry with safety allowing adequate free board for security against swamping. The 600 ton capacity of the lighter was obviously not the amount necessary to bring her decks awash. Nor do we think that the rule applied by Schaumburg was "tantamount to saying that the weight of the unloaded side of a vessel keeps her up—not down". On the other hand, Schaumburg's calculation failed to contemplate several important factors. In particular, he made no allowance for the effect of the water in the hold, which had been shipped through the open hatch due to the list, or even of the water which may have leaked into the hold of a priorly seaworthy barge because of the strain on her seams which the unbalanced loading produced. "Any water over the deck edge, 'diminishes resistance to inclination'". The Adah, 2 Cir., 258 F. 377, 380, note 1, quoting from The Royal Sceptre, D.C., 187 F. 224, 228.

 The rejection of Schaumburg's opinion evidence was fully justified. The fact that it was not directly controverted by other opinion evidence did not make it binding upon the court. Being oral, its credibility was for the court at all times, even though unrefuted. But, it was directly controverted by a presumption flowing from other evidence in the case. The lighter was seaworthy. That fact may be taken as established. "When a tight boat capsizes in calm water, the inference is almost irresistible that her action is due to the disposition of her load." The Adah, supra, 258 F. at page 379. And, with the elimination of one (unseaworthiness) of the two possible causes for capsizing, the strong presumption of the other cause (improper loading) remained. Taylor Bros.

Lumber Co., Inc. v. Sunset Lighterage Co. et al., 2 Cir., 43 F.2d 700, 702. This, alone, was sufficient to overcome Schaumburg's opinion. Furthermore, the court below had come to the same conclusion, as to what testimony was credible, "independently of the analysis * * * [which the court] made in the light of physical laws".

 We find nothing in the record to warrant our disturbing the findings of the court below. With the negligence thus established, Lavino's liability for the resultant damages attached as a matter of law. As stevedore, it was Lavino's duty to load the sulphur on the lighter in a prudent manner. The Robert R., 2 Cir., 255 F. 37, 39; The Evelyn, 2 Cir., 282 F. 250, 252. And, that, Lavino failed to do. The protests of Gomes, master of the lighter, to Lavino's foreman against the manner in which the lighter was being loaded were notice of the fault for which Lavino was responsible and for which Lavino alone is answerable. Kelly v. Overseas Shipping Co., D.C., 7 F.2d 732, 734.

 There yet remains the matter of costs, which in an action in admiralty rests in the sound discretion of the court. The Lily, 9 Cir., 69 F.2d 898, 900; The James McWilliams, 2 Cir., 49 F.2d 1026, 1027; The Verona, D.C., 40 F.2d 742, 743. Admittedly, General Chemical Company, the owner of the cargo, suffered a loss without any fault of its own. But, the decree having gone against General Chemical in Loveland's proceeding to limit its liability, Lavino's appeals from the decrees in Loveland's and General Chemical's actions against Lavino made it necessary for General Chemical to appeal from the limitation of liability decree in order to protect its interests pending disposition of the Lavino appeals. The affirmance of the decree in the limitation of liability proceeding should, therefore, be without costs.

The decrees of the court below in the appeals at Nos. 7289 and 7290 are affirmed with costs to the respective appellees. The decree in the appeal at No. 7303 is affirmed without costs.