## Waterware Corp. v. Ametek/US Gauge Division, PMT Products

*Martin J. Pezzner,* for plaintiff.
*Howard D. Scher,* for defendants.

HERRON, *J.,* April 17, 2001—Presently before this court are the preliminary objections of defendants, Ametek/US Gauge Division, PMT Products, U.S. Gauge Division, Ametek Inc., and Ametek (collectively Ametek) to the amended complaint of plaintiff, Waterware Corporation.

For the reasons set forth in this opinion, the court is entering a contemporaneous order sustaining the objections in part and overruling the objections in part.

## BACKGROUND[1]

Waterware is a company which specializes in the construction and maintenance of sewer controls and monitoring systems. Am. compl. at ¶1. Ametek engages in the business of selling specialty equipment for the moni-

---

1. The facts presented in this section of the opinion were gleaned from the complaint, and are accepted as true for purposes of ruling on preliminary objections. See *Tucker v. Philadelphia Daily News,* 757 A.2d 938, 941-42 (Pa. Super. 2000).

toring of underground sewer systems. *Id.* at ¶4. In or about 1994, Waterware had contracted with the City of Philadelphia to provide and install monitoring equipment for sewer maintenance and to provide a stockpile of replacement parts for future repairs. *Id.* at ¶5. In order to fulfill its contract with the city, Waterware requested bids from specialized equipment suppliers for level sensors to be installed in the city's sewer system. *Id.* at ¶6. Waterware specified that the sensors be suitable for a sewer environment and would be covered under a five-year warranty. *Id.* at ¶7.

Prior to June 1995, Waterware met with representatives of Ametek to discuss the purchase of level sensors. *Id.* at ¶8. In order to induce Waterware to enter into a contract for the sale of its level sensors, Ametek submitted bids and advised Waterware that "[its] sensors were very suitable for the sewer environment," and advised that the failure rate of its sensors would not exceed 6 percent and any sensors that failed would be warranted for five years. *Id.* Relying on these representations, Waterware offered to purchase the sensors from Ametek by issuing a purchase order dated June 7, 1995, which required that the sensors be warranted for five years. *Id.* at ¶9. See am. compl., exhibit A.[2] On June 20, 1995, by facsimile, Ametek accepted Waterware's offer. *Id.* at ¶10. See am. compl., exhibit B. Thereafter, Waterware purchased approximately 500 sensors from Ametek. *Id.* at ¶11.

---

2. References in this opinion to "exhibits" shall be understood as those exhibits attached either to the amended complaint or to the objections. The amended complaint was attached at exhibit B to the objections.

During the course of installation and operation of the sewer system, numerous sensors failed and continued to fail at a rate of 27 percent, rather than the 6 percent failure rate represented by Ametek. *Id.* at ¶12. Waterware returned 137 sensors for warranty repairs, but Ametek has refused to repair/replace 42 of these sensors. *Id.* at ¶¶12-13. As a direct and proximate result of the sensor failure, other component parts of the system which were not manufactured by, or purchased from, Ametek have also been damaged and Waterware has been forced to replace these parts at a substantial cost. *Id.* at ¶14. In addition, as a result of the failed sensors and Ametek's alleged refusal to honor its contractual and/or warranty obligations, Waterware has suffered in the performance of its contract with the city and its reputation has allegedly been damaged. *Id.* at ¶¶15-16.

There is a separate prior action pending that has been filed by Waterware against the city, in which Waterware asserts breach of contract and/or unjust enrichment claims against the city. See objections, exhibit D.[3] Specifically, Waterware alleges that the city failed to fulfill its contractual obligations in assisting Waterware in obtaining permits, failed to provide necessary right of ways and failed to provide necessary information for the design and installation of the main computer system. *Id.* at ¶6. Waterware also asserts other allegations against the city in reference to the city's delaying the contract's performance, the city's wrongful declaration of Waterware's default and the city's failure to pay Waterware for work that had been completed. *Id.* at ¶¶6-14.

---

3. This action is captioned as *Waterware Corporation v. City of Philadelphia,* November term 1999, no. 1382.

Notwithstanding its action against the city, Waterware has instituted the present suit against Ametek, asserting counts for breach of contract, breach of warranty, violations of the Uniform Commercial Code, codified at 13 Pa.C.S. §2300 et seq., negligent misrepresentation, and fraudulent misrepresentation. See am. compl., Counts I-VII. In response, Ametek has filed the objections asserting pendency of a prior action and moving to stay the present action, attacking the legal sufficiency of the negligent misrepresentation count based on the economic loss doctrine, and moving to strike the demand for punitive damages and attorney fees. See objections at ¶¶1-36.

## DISCUSSION

The objections, asserting that the economic loss doctrine bars the claim for negligent misrepresentation are sustained in part and overruled in part, and the motion to strike the demand for attorney fees is granted without prejudice. The remaining objections are without merit and are overruled.

### I. *Pendency of Prior Action and Grounds for a Stay of the Present Action*

A party may raise preliminary objections based on the pendency of a prior action. Pa.R.C.P. 1028(a)(6). This protects "a defendant from harassment by having to defend several suits on the same cause of action at the same time." *Penox Technologies Inc. v. Foster Medical Corp.,* 376 Pa. Super. 450, 453, 546 A.2d 114, 115 (1988). Under Pennsylvania law, the question of a pending prior action "is purely a question of law determin-

able from an inspection of the pleadings." *Davis Cookie Co. v. Wasley,* 389 Pa. Super. 112, 121, 566 A.2d 870, 874 (1989) (quoting *Hessenbruch v. Markle,* 194 Pa. 581, 592, 45 A. 669, 671 (1900)).

To sustain a preliminary objection based on pending prior action, "the objecting party must demonstrate to the court that in each case the parties are the same, and the rights asserted and the relief prayed for are the same." *Virginia Mansions Condominium Association v. Lampl,* 380 Pa. Super. 452, 456, 552 A.2d 275, 277 (1988). See also, *Norristown Automobile Co. v. Hand,* 386 Pa. Super. 269, 274, 562 A.2d 902, 904 (1989); *Davis Cookie Co.,* 389 Pa. Super. at 120, 566 A.2d at 874 (requiring that the parties be "acting in the same legal capacity" in both actions). But, see *Hessenbruch,* 194 Pa. at 594, 45 A. at 671 (while a plaintiff in the first suit may be a defendant in second suit, the fact that the same persons are present in both suits allows a court "with perhaps some liberality of construction, [to] assume that the parties are the same."). The three-pronged identity test must be applied strictly when a party is seeking dismissal under the doctrine of prior pending action. *Hand,* 386 Pa. Super. at 274, 562 A.2d at 904.

Alternatively, if the identity test is not strictly met but the action involves a set of circumstances where the litigation of two suits would create a duplication of effort on the part of the parties, waste judicial resources and "create the unseemly spectacle of a race to judgment," the trial court may stay the later-filed action. *Id.* at 276-77, 562 A.2d at 905. See also, *Singer v. Dong Sup Cha M.D.,* 379 Pa. Super. 556, 560, 550 A.2d 791, 793 (1988) ("while the pendency of a foreign action does not serve as a bar to an action brought in a Penn-

sylvania court, the court has the inherent, equitable power to stay the proceedings in the second suit during the pendency of the prior suit"); *Klein v. City of Philadelphia,* 77 Pa. Commw. 251, 253-54, 465 A.2d 730, 731 (1983) (directing the trial court to stay the second action even though the plaintiffs in the two suits are not the same party, but both plaintiffs filed taxpayer suits in representative capacities to challenge the award of two municipal contracts); *L.B. Corp. v. Jessop Steel Co.,* 1985 WL 5937 at **4-5 (C.P. Chester Cty. May 17, 1985) (deeming that the two suits involving the same parties and same leases but asking for different relief "are so intertwined that one naturally depends on the other").

Here, Ametek asserts that a stay of the present suit is justified because the present case and Waterware's case against the city are sufficiently intertwined factually. Defs.' mem. of law at 11. Ametek also contends that Waterware's ability to perform its contract with the city is directly at issue in the present suit, and that many of the damages claimed by Waterware in this action are the same damages claimed in the action against the city. *Id.* Contrary to Ametek's arguments, this court finds as a matter of law that the doctrine of prior pending action does not apply in the present circumstances. It is clear that Waterware's suit against the city and its present suit against Ametek do not involve the same parties and the claims do not arise out of the same contract. Even if Waterware's suit against the city were to result in an adverse verdict for Waterware, such a result would not necessarily dispose of, or be binding on, Waterware's claims against Ametek. Similarly, the circumstances do not justify staying the present action to await the dispo-

sition of Waterware's case against the city. But, see *Hand,* 386 Pa. Super. at 275, 562 A.2d at 905 (concerning two suits between employer and employee— the first by employee against employer for breach of contract; the second by employer against employee for tort); *Klein,* 77 Pa. Commw. at 253-54, 465 A.2d at 731 (reasoning that judgment in one suit would be binding on the second because both suits are taxpayer actions involving similar claims); *Jessop Steel Co.,* 1985 WL 5937 at **3-4 (identical parties involved in both suits, but first suit seeks rescission or reformation of the leases, while second suit is a breach of contract action seeking the rent due on the leases).

For these reasons, Ametek's objections based on pendency of a prior action are overruled and Ametek's request for a stay of the present action is denied.

## II. *Legal Sufficiency of Negligent Misrepresentation Count*

A party may raise preliminary objections which challenge the legal insufficiency of a pleading or a demurrer. Pa.R.C.P. 1028(a)(4). Preliminary objections, whose end result would be the dismissal of a cause of action, should be sustained only where "it is clear and free from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish [its] right to relief." *Bourke v. Kazara,* 746 A.2d 642, 643 (Pa. Super. 2000). Moreover,

"[I]t is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer. . . . Put simply, the question presented by demurrer is

whether, on the facts averred, the law says with certainty that no recovery is possible." *Bailey v. Storlazzi,* 729 A.2d 1206, 1211 (Pa. Super. 1999). (citations omitted)

To support a claim for negligent misrepresentation, a plaintiff must allege (1) a misrepresentation of material fact, (2) made under circumstances where the misrepresenter ought to have known of its falsity, (3) with an intent to induce another to act on it, and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *Bortz v. Noon,* 556 Pa. 489, 500, 729 A.2d 555, 561 (1999). Though similar to a cause of action for intentional misrepresentation, negligent misrepresentation differs in the sense that the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth. *Id.* at 501, 729 A.2d at 561. In addition, like any action in negligence, there must be an existence of a duty owed by one party to another. *Id.*

The gravamen of Count VI of the amended complaint is that defendants made misrepresentations of material fact regarding the reliability of their sensors and their suitability to a sewer environment in order to induce Waterware to purchase and install the sensors, and that Waterware suffered damages as a result of the sensors' failure to operate and caused Waterware to replace the sensors and other parts, that were not manufactured by Ametek, at substantial costs. See am. compl. at ¶¶53-62. Taken as true, as this court must for purposes of ruling on a demurrer, these allegations do state a cause of action for negligent misrepresentation. However, this initial conclusion does not end this court's inquiry.

Rather, this court must determine whether the claim is barred by the economic loss doctrine on account of

the nature of the alleged damages. As a result of Ametek's alleged negligent misrepresentations, Waterware allegedly suffered the following damages, including: the cost of removal of allegedly defective sensors, the cost of reinstallation of replacement sensors, the cost of obtaining a sufficient stockpile of sensors to fulfill its contractual obligations with the city, loss of good will and/or harm to reputation, damage to its existing business operations and prospective business opportunities, the cost of replacing other component parts of the sewer system not manufactured by Ametek, and the cost of having to reassign employees from other jobs to address the problems with the failed sensors. See am. compl. at ¶¶17, 22-23, 30-31, 36-37, 41-42, 51-52, 54-55, 61-62, 70-71.[4]

Ametek asserts that Count VI of Waterware's amended complaint for negligent misrepresentation must be dismissed with prejudice since all of the "alleged damages constitute economic losses that are not recoverable under a negligence theory under Pennsylvania law" pursuant to the economic loss doctrine. Defs.' mem. of law at 14-15. Ametek also argues that the exception to the economic loss doctrine for "other property" does not apply to the type of property that one would reasonably expect to be injured as a direct consequence of the failure of the product at issue; *i.e.,* the sensors. *Id.* at 16. In response, Waterware argues that the economic loss doctrine, as analyzed by the Third Circuit, does not preclude recovery for damage to property or compo-

---

4. Waterware asserts these same damages to every count of its amended complaint. However, for purposes of analyzing the objections to Count VI, this court will address the damages as they apply to that count only.

nents which were not manufactured or supplied by the defendants. Pl.'s mem. of law at 15-17.

## A. Economic Loss Doctrine

The purpose of the economic loss doctrine, as adopted in Pennsylvania, is "maintaining the separate spheres of the law of contract and tort." *New York State Electric & Gas Corp. v. Westinghouse Electric Corp.,* 387 Pa. Super. 537, 550, 564 A.2d 919, 925 (1989). As noted in *NYSEG:*

"The Supreme Court [in *East River*] . . . emphasized that where an allegedly defective product causes damage only to itself, and other consequential damages resulting from the use of the product, the law of contract is the proper arena for redressing the harm because in such a case, the damages alleged relate specifically to product quality and value as to which the parties have had the opportunity to negotiate and contract in advance. They have allocated the risks of possible types of losses and agreed on the level of quality that will be given for the price demanded. When the product fails to conform and only economic losses result, the parties' recovery one against the other for economic losses should be limited to an action on that contract and no additional recovery in negligence or strict liability is permitted. . . ." 387 Pa. Super. at 550-51, 564 A.2d at 925-26. See also, *REM Coal Company Inc. v. Clark Equipment Co.,* 386 Pa. Super. 401, 411-13, 563 A.2d 128, 132-34 (1989) (en banc) (adopting the rationale of *East River SS. Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858, 871-73 (1986)).

Thus, the Commonwealth's version of the doctrine precludes recovery for economic losses in a negligence

action if the only damage sustained by the plaintiff/purchaser is damage to the product itself but no other property damage or personal injury resulted. *Id.* at 412, 563 A.2d at 133. This doctrine generally includes actions for negligent misrepresentation. *Duquesne Light Co. v. Westinghouse Electric Corp.,* 66 F.3d 604, 620 (3d Cir. 1995); *North Am. Roofing & Sheet Metal Co. v. Building & Constr. Trades Council,* no. civ. a. 99-2050, 2000 WL 230214 at **7-8 (E.D. Pa. Feb. 29, 2000) (relying on economic loss doctrine to dismiss a claim for negligent misrepresentation). Moreover, economic losses include damage to the product and consequential damages in the nature of costs of repair, replacement and/or lost profits. *REM,* 386 Pa. Super. at 403, 563 A.2d at 129. Damages to good will and business reputation are also considered economic losses. *Valley Forge Convention & Visitors Bureau v. Visitor's Servs. Inc.,* 28 F. Supp.2d 947, 951 (E.D. Pa. 1998) ("Contrary to plaintiff's suggestion, [economic losses] also include loss of business reputation and good will."); *Lucker Mfg. v. Milwaukee Steel Foundry, Div. Grede Foundaries,* 777 F. Supp. 413, 417 (E.D. Pa. 1991) ("[T]he economic loss rule bars tort recovery for good will damages.").

Here, pursuant to the economic loss doctrine, Waterware is precluded from recovering on its negligent misrepresentation claim for all of its alleged damages incurred from the defective sensors and the consequential costs associated with replacing the sensors, the loss of good will, harm to reputation and reassigning its employees to address the sensor problems. However, the real issue is whether the economic loss doctrine bars Waterware's recovery of the cost of replacing other

component parts of the sewer system that were not manufactured by Ametek. For the following reasons, this court holds that the economic loss doctrine does not preclude recovery for damages to these other parts on a negligent misrepresentation theory.

First, in *East River,* the shipbuilder had contracted with a manufacturer to design, manufacture and supervise the installation of turbines which would be the main propulsion units for four ships. 476 U.S. at 859-60. The turbines were defective, causing damage to the ships and requiring the ships' repair. *Id.* at 860-61. Certain counts of the complaint alleged that the defectively designed turbine components damaged only the turbine itself. *Id.* at 867. The Supreme Court rejected these assertions, finding that there was no damage to other property since the manufacturer had supplied each turbine as an integrated package. *Id.* It stated: "[s]ince all but the very simplest of machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability." *Id.* (quoting *Northern Power & Engineering Corp. v. Caterpillar Tractor Co.,* 623 P.2d 324, 330 (Alaska 1981)).

The court, nonetheless, reaffirmed that a tort remedy remained available for damage to "other property" or personal injuries. *Id.* at 870.

In the more recent decision of *Saratoga Fishing Co. v. J.M. Martinac & Co.,* the Supreme Court clarified the distinction between what was the "product" and what constituted "other property." 520 U.S. 875 (1997). In that case, the plaintiff was the second owner of a fishing vessel which caught fire, flooded and sank as a re-

sult of a defective hydraulic system. *Id.* at 877-79. The plaintiff sued the boat manufacturer/supplier to recover for damage to fishing equipment which was added by the initial user. *Id.* The Supreme Court concluded that: "[w]hen a manufacturer places an item in the stream of commerce by selling it to an initial user, that item is the 'product itself' under *East River*. Items added to the product by the initial user are therefore 'other property,' and the initial user's sale of the product to a subsequent user does not change these characterizations." *Id.* at 879.

The product in *Saratoga* was deemed to be the original ship with the defective hydraulic system that itself caused the harm. *Id.* at 885. The equipment added to the ship was deemed to be "other property" for which the plaintiff could recover damages on a negligence theory. *Id.*

This rationale was followed in *2-J Corporation v. Tice,* 126 F.3d 539 (3d Cir. 1997), where the plaintiff sought damages to its inventory and other items when the roof of its warehouse collapsed and defendant had constructed the steel structure supporting the roof. 126 F.2d at 540-41.

The defendant/manufacturer moved for summary judgment, arguing that tort recovery was barred by the economic loss doctrine and the district court granted the defendant's motion. *Id.* In ruling as such, the district court expanded the economic loss doctrine to bar recovery for damage to property that foreseeably may be injured if the defective product fails. *Id.* at 542. The district court was convinced that where property is effectively "integrated" with the defective product that damage to it is tantamount to damage to the product

itself. *Id.* However, the Third Circuit reversed, concluding that the Pennsylvania Supreme Court would not adopt this expansion of the doctrine. *Id.* The *Tice* court noted that "for purposes of applying the economic loss doctrine, 'the product' is no more and no less than whatever the manufacturer placed in the stream of commerce by selling it to the initial user." *Id.* at 543 (quoting *Saratoga,* 520 U.S. at 879). The court therefore held that the plaintiff could recover for the loss of its inventory and other property stored in the warehouse. *Id.* at 544. But, see *Industrial Uniform Rental Co. v. International Harvester Co.,* 317 Pa. Super. 65, 77-78, 463 A.2d 1085, 1092 (1983) (where various components of a product are provided by the *same supplier as part of a complete and integrated package,* even if a defect in one component damages another, there is no damage to "other property" of the plaintiff).[5]

---

5. Ametek relies on several district court cases for the proposition that the economic loss doctrine bars recovery for the type of property that one would reasonably expect to be injured as a direct consequence for the failure of the product at issue. See *Factory Market Inc. v. Schuller International Inc.,* 987 F. Supp. 387 (E.D. Pa. 1998) (holding that building lessee may not maintain negligence action against roofing manufacturer since economic loss doctrine precluded claims for water damage to tenants' property since building lessee must have reasonably expected that if the roof was not watertight, property could be injured by leaks); *Neuchatel Ins. v. ADT Security Systems Inc.,* 1997 WL 5398687 at \*\*7-8 (E.D. Pa. Aug. 11, 1997) (holding that property stolen from a vault and business interruption damages resulting from the loss of that property were not "other property" where the parties would reasonably expect such losses as a direct consequence of the sale of a vault which failed to meet buyer's contractual specifications); *Hartford Fire Ins. Co. v. Hulls America Inc.,* 893 F. Supp. 465, 469 (E.D. Pa. 1995) (holding that water damage when roof collapsed cannot constitute injury to "other property" to fit within exception to the economic loss doctrine).

Here, under the rationale of *Saratoga, East River,* and *Tice,* Waterware should be able to recover for the costs of replacing other component parts of the sewer system which were not manufactured by Ametek but were allegedly damaged on account of the defective sensors. These other component parts should be considered "other property" since the sensors provided by Ametek were the "product" provided by Ametek and only one part of the package to be incorporated in the sewer system. Naturally, Waterware will have to establish proof that other components, that were not manufactured by Ametek, were in fact damaged in order to recover on a negligent misrepresentation theory. Moreover, Waterware may not recover economic damages to the sensors themselves on this theory but is limited to contract and warranty causes of action.

For these reasons, Ametek's objections to Count VI of the amended complaint (negligent misrepresentation), based on the economic loss doctrine, are sustained in part and overruled in part.

### III. *Motion To Strike Demand for Punitive Damages and Attorney Fees*

Finally, Ametek moves to strike both the demand for punitive damages and the one for attorney fees from the ad damnum clauses of the amended complaint. Ametek argues that Waterware has not alleged any facts

---

Ametek's reliance on these district court cases is unpersuasive since these decisions, which preceded *Saratoga* and *Tice* other than *Factory Market,* did not take into account the *Tice* court's express rejection of the expansion of the economic loss doctrine to preclude recovery for damage to property which may foreseeably result from damage to the product itself.

in support of the imposition of punitive damages in its claims for negligent misrepresentation and/or fraudulent misrepresentation. Defs.' mem. of law at 19-20. Further, Ametek contends that attorney fees are not recoverable absent statutory authority, agreement between the parties or some other exception. This court agrees with Ametek only with respect to the demand for attorney fees, but it finds that the complaint sufficiently sets forth the general intent necessary to support a demand for punitive damages.

Preliminary objections are permitted to strike scandalous or impertinent matter from a pleading. Pa.R.C.P. 1028(a)(2). See *Hudock v. Donegal Mutual Insurance Co.,* 438 Pa. 272, 277-78 n.2, 264 A.2d 668, 671 n.2 (1970) ("a preliminary objection in the nature of a motion to strike off impertinent matter . . . would appear to be the appropriate means through which to challenge an erroneous prayer for damages"). Under the general rule, attorney fees cannot be recovered from an adverse party, "absent an express statutory authorization, a clear agreement by the parties or some other established exception." *Merlino v. Delaware County,* 556 Pa. 422, 425, 728 A.2d 949, 951 (1999). Counsel fees may be awarded "as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter." 42 Pa.C.S. §2503(7). In addition, a cause of action for misrepresentation can support a claim for punitive damages. *McClellan v. Health Maintenance Organization of Pennsylvania,* 413 Pa. Super. 128, 144, 604 A.2d 1053, 1061 (1992). However, "a court may not award punitive damages merely because a tort has been committed. Additional evidence must demonstrate willful, malicious, wanton, reckless or oppres-

sive conduct." *Id.* Further, "it is difficult to picture a fact pattern which would support a finding of intentional fraud without providing proof of 'outrageous conduct' to support an award of punitive damages." *Id.* (citing *Delahanty v. First Pennsylvania Bank N.A.,* 319 Pa. Super. 90, 129-30, 464 A.2d 1243, 1263 (1983)). See also, *Bannar v. Miller,* 701 A.2d 232, 242 (Pa. Super. 1997) ("Punitive damages are appropriate when an individual's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct."). Moreover, "[m]alice, intent, knowledge, and other conditions of mind may be averred generally." Pa.R.C.P. 1019(b).

Here, plaintiff fails to allege any agreement, circumstances or statute which would entitle it to attorney fees. Therefore, the motion to strike the demand for attorney fees is granted without prejudice. However, plaintiff sets forth a count for intentional misrepresentation (Count VII) in its amended complaint and defendants do not set forth a demurrer to this count in its objections. Therefore, this count remains and it may support an award of punitive damages. Specifically, plaintiff alleges that "[d]efendants made representations [concerning the level sensors] with a *reckless disregard* for their falsity" and "with the intent and for the purpose of deceiving the plaintiff and to induce plaintiff into relying on the representations." Am. compl. at ¶¶65-66. For purposes of ruling on preliminary objections and a motion to strike, these allegations are sufficient to allow the demand for punitive damages to remain even though Waterware will have to present suitable proof of Ametek's allegedly reckless conduct.

For these reasons, the motion to strike the demand for attorney fees is granted, but the motion to strike the demand for punitive damages is denied as premature.

## CONCLUSION

For the reasons set forth above, the objections asserting prior pending action are overruled and the request to stay the present action is denied. The objections to Waterware's claim for negligent misrepresentation, based on the economic loss doctrine, are sustained in part and overruled in part. And the motion to strike the demand for attorney fees is granted, while the motion to strike the demand for punitive damages is denied.

## ORDER

And now, April 17, 2001, upon consideration of defendants' preliminary objections to the amended complaint, plaintiff's response thereto, all respective memoranda, and in conjunction with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered as follows:

(1) The preliminary objections, asserting prior pending action pursuant to Pa.R.C.P. 1028(a)(6) are overruled and the request to stay the present action is denied;

(2) The preliminary objections to Count VI for negligent misrepresentation, asserting legal insufficiency based on the economic loss doctrine are sustained in part and overruled in part;

(3) The preliminary objections, moving to strike the demand for attorney fees, are sustained without prejudice, and the demand for attorney fees are stricken;

(4) The preliminary objections, moving to strike the demand for punitive damages, are overruled; and

(5) The defendants are directed to file an answer to the amended complaint within 20 days of this order.