Daniel ADAMS, Thomas Allison, James Anderchin, Brian Anderson, James Anderson, Lawrence Anderson, Connie Ashurst, Kelly Atherton, Sr., Clark Baird, Brain Baker, Jason Ball, Joseph Barnosky, Thomas Bartlebaugh, Terry Bearer, Thomas Bearer, Bernice Berkey, Harry Berkey, Todd Berry, Christopher M. Bernard, Ricky Bertolino, Christopher Betsinger, Timothy Betts, Gerald Bills, Jason Bingaman, Daniel Bliss, Jeramie Blose, Kenneth Blystone, Andrew Bodnar, Kenneth Bogle, Christopher Bopp, Daniel Bopp, Kerry Boring, Thomas Bork, Justin Bowman, Bernard Boyer, Scott Bracken, Gary Branan, Joseph Briljart, III, Richard Bukoskey, Wayne Burkett, George Cable, Jill Carnahan, David Carrick, John Cernic, William Cessna, Donald Chambers, Jr., Ronald Clark, Thomas Conti, Keith Cook, Thomas Coon, Ronald Corradini, Richard Cramer, Jason Creighton, Matthew Curry, Mike Curry, Stephen Czerniec, Jr., William Dailey Jr., J. Davis, Art Deckard, Jr., Charles Demorest, Matthew Dex, Daniel Deyarmin, David Deyarmin, Tony Elkin, Raymond Everett, Linda Fabin, Peter Fedoruk, Jr., Justin Feracioly, Kenneth Fishel, Rodney Fishel, Brian Fleming, Leroy Flick, Jr., Scott Forrester, Jason Frederick, Kenneth Freidhof, Patrick Friedhof, Arthur Fry, Jr., Greg Gabborini, Victor Gabborini, Dale Gandolfi, William Gongloff, Matthew Gress, Jeffrey Griffith, Michael Grimes, Michael Gunter, Kenneth Gwizdak, Thomas Gwizdak, Kelly Haight, Ronald Hansen, Timo-

---

thy Harasty, Andrew Helman, Gary Henderson, Brad Hershman, Nicholas Hilty, David Himes, Randy Hockenberry, William Hollins, Stephen Holupka, Steven Howard, Todd Huey, Raymond Huff, Ralph Hutton, Tommie Ishman, Scott Jeffries, Myron Jones, Sr., Timothy Jones, Jeffrey Kamler, Tom Kamler, J. Keeler, Leslie Keener, Scott Keith, Chad Kellar, Larry Kelly, David Kelly, Adam Kenley, Etta Mae Keirn, Leroy Kinnan, Edward Kirsch, Michael Kline, David Knepshield, Sr., Delmort Kolasa, Sr., David Kotzur, Kenneth Kralik, Jr., Robert Kunkle, Robert Kunselman, John Kuntzman, Charles Lamb, Joshua Lamison, Keith Lantzy, Steven Lawrence, John Lawson, Daniel Leamer, Stephen Lentz, Anthony Ligas, Thomas Ligas, Erig Ligas, Donald Liscsak, Frank Liscsak, Keith Lobodinsky, Blair Long, Evelyn Long, Heath Lutz, Gary Mandrick, Donald Marsh, Jr., John Martin, Paul Martino, James Matthews, William Mattei, Scott McAdoo, James McCachren, Jr., Theodore McCombs, Herman McConnell, Brian McCracken, James McCullough, Kerry McCullough, Edward McEntire, James McGeary, Leo McMackin, Gerald McManamy, Daniel Meyer, Aaron Miller, Jeremy Miller, Michael Miller, Nathan Miller, Richard Miller, Ronald Moehler, Donald Montgomery, Paula Monza, Bryan Mumau, George Murphy, Eric Nagle, Greg Nealen, Todd Nixon, James Noble, Robert Noble, Robert Noel, Michael Novella, Christopher Olp, Todd Ortman, Nathan Palko, Timothy Pantall, Matthew Paterchak, Gilbert Patterson, Thomas Patterson, Richard Peace, Casey Pennington, Howard Peterman, David Poole, Jeremiah Poole, Dennis Powell, Sr., Barry Prugh, Jason Prugh, Lois Jean Putt, Kenneth Rearick, John Reed, Keith Reed, John Reesman, Richard Reifendifer, Kenneth Repak, Thomas Repak, Paul Repak, Jeffrey Rick, Joshua Rietscha, Kelly Robertson, Ruel Root, James Rummell, John Rummell, Mitchell Sabella, Douglas Serbin, Jeffrey Shaffer, Charles Shaffer, Jr., John Shields, Todd Shultz, Christine Shusko–Heasley, Charles Sickles, Gerald Silvis, Brian Sisitky, Douglas Skunda, Marvin Slee, Bradley Smith, Elaine Smith, Michelle Smith, Robert Smyers, Mark Snyder, Ronald Snyder, Jerry Snyder, Jr., Matthew Solecki, James Solley, Richard Solnosky, Jesse Spade, Richard Spencer, Timothy Stadtmiller, Dale Steffey, Cathy Steffey, Bradley Stiles, Robert Strellec, Jr., Kenneth Stroupe, Jonathan Stumph, Carl Sunderland, Jeremy Thomas, Richard Thomas, Gary Thompson, Roger Tinkey, Mike Tones, Rick Townsend, Scott Trabert, Kenneth Travis, Jr., David Turner, Scott Walker, Terry Walker, David Wells, Jr., Jeffrey White, Francis Williams, Harold Willman, Benjamin Wilshire, Jr., Chris Wilson, James Wilson, Jason Wise, Brian Wolfe, Paul Yarko, Michael Yeckley, Todd Yesho, Michael Zeiler, and John Zimmerman, Brian Fleming, Appellants

v.

COPPER BEACH TOWNHOME COMMUNITIES, L.P., Heritage Oaks, II, L.P., Regency Indiana Enterprises, L.P., and Ray Winters and Sons, Appellees

Superior Court of Pennsylvania.

Argued Oct. 22, 2002.
Filed Jan. 23, 2003.

Scott R. Leah, Pittsburgh, for appellants.

Eric N. Anderson, Pittsburgh, for Heritage Oaks, II, L.P., appellee.

Robert A. Arcovio, Pittsburg, for Regency Indiana Enterprises, L.P. appellee.

Anthony Sunseri, Pittsburgh, for Ray Winters and sons, appellee.

Before MUSMANNO, TODD and KLEIN, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 Appellants (plaintiffs below) appeal from the Order sustaining the Preliminary Objections filed by Copper Beach Townhome Communities, L.P. ("Copper Beach"), Heritage Oaks, II, L.P. ("Heritage Oaks"), Regency Indiana Enterprises, L.P. ("Regency Indiana"), and Ray Winters and Sons (defendants below) (collectively "Appellees"), and dismissing the Complaint. We affirm.

## The Parties Involved

¶ 2 Appellants ("Employees") are approximately 250 employees of Specialty Tires of America ("Specialty Tires"), a tire manufacturing plant located in Indiana County, Pennsylvania. Employees were laid off when Specialty Tires closed for one week to clean and repair certain equipment that had been contaminated due to storm water runoff from a neighboring property.

¶ 3 Copper Beach purchased from Heritage Oaks a portion of the property that adjoined the property of Specialty Tires. Heritage Oaks sold the adjoining property to Copper Beach but retained an easement over a part of the property. Copper Beach began excavating and grading the land in order to prepare it for construction of a townhouse community. Ray Winters and Sons performed the excavation and grading work.

¶ 4 Regency Indiana also owns property adjacent to Specialty Tires. Some or all of the water runoff may have come from that property, not the Copper Beach property. Regency Indiana caused a storm pipe that carried water from the Copper Beach property to be capped. That storm pipe, if used, may have diverted the storm water that damaged Specialty Tires away from Specialty Tires.

## Procedural History

¶ 5 On April 20, 2001, Employees filed a Complaint against Appellees. Employees sought to recover the wages and benefits that they lost when Specialty Tires temporarily closed for a period of one week. Appellees filed Preliminary Objections asserting in pertinent part that the Economic Loss Doctrine, which bars recovery in negligence where only economic losses are claimed, applied and barred Employees' claims. Appellees also asserted that there was no private cause of action under the Clean Streams Act ("CSA"), 35 P.S. § 691 et seq.

¶ 6 Employees subsequently filed an Amended Complaint asserting causes of action for public nuisance and for violation of Pennsylvania's Storm Water Management Act ("SWMA"), 32 P.S. § 680 et seq., but withdrew their claims for negligence and their claims under the CSA. Appellees filed Preliminary Objections to the Amended Complaint.

¶ 7 Following a hearing on the Preliminary Objections, and a review of the parties' briefs, the trial court entered an Order applying the Economic Loss Doctrine to bar all claims alleged in the Complaint, and sustaining the Preliminary Objections. This timely appeal followed.

## Discussion

¶ 8 Employees raise the following sole issue for our review: whether the common law Economic Loss Doctrine applied to bar a statutory cause of action under the SWMA.

¶ 9 Preliminary objections in the nature of a demurrer should be sustained only in cases that are clear and free from doubt. *Pennsylvania AFL–CIO v. Commonwealth of Pennsylvania*, 563 Pa. 108, 114, 757 A.2d 917, 920 (2000). In ruling whether preliminary objections were properly sustained, we have previously stated the following:

> [a]ll material facts as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of this review. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt must be resolved in favor of overruling it.

*Romeo v. Pittsburgh Associates,* 787 A.2d 1027, 1030 (Pa.Super.2001).

¶ 10 Employees contend that by enacting the SWMA, the Pennsylvania Legislature provided an "unfettered" private cause of action to "any person injured by actions" which violate the SWMA. Brief of Appellants at 10. Because the intent of the Legislature was to protect individuals from damages caused by storm water run-off, Employees argue that to apply the Economic Loss Doctrine (or a narrow definition of the term "injury") would threaten the intent of the SWMA. We disagree.

 ¶ 11 The Economic Loss Doctrine provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage. *Spivack v. Berks Ridge Corp.,* 402 Pa.Super. 73, 586 A.2d 402 (1991); *Aikens v. Baltimore & Ohio RR Co.,* 348 Pa.Super. 17, 501 A.2d 277 (1985).

¶ 12 In this case of first impression, we are asked to interpret the term "injury" as used by the SWMA to determine whether solely economic damages are recoverable under the relevant provisions of the SWMA. Like the trial court, we look to this Court's decision in *Aikens,* which is factually analogous to this case, and the Third Circuit's decision in *Werwinski v. Ford Motor Co.,* 286 F.3d 661 (3d Cir. 2002), for guidance.

¶ 13 In *Aikens,* the employees of a manufacturing company brought suit seeking damages for lost wages, alleging that the appellee's negligence caused a train derailment which damaged the plant at which they worked. As a result of the derailment, production at the plant was curtailed and the employees suffered the loss of work and wages. The employees did not suffer personal injury or property damage from the derailment. This Court held that no cause of action exists for negligence

that causes only economic loss. *Aikens,* 501 A.2d at 279. We noted that "to allow a cause of action for negligent cause of purely economic loss would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action." *Id.* "Such an outstanding burden is clearly inappropriate and a danger to our economic system." *Id.*

¶ 14 In *Werwinski,* the plaintiff asserted a cause of action under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa.C.S.A. § 201–1 *et seq. Werwinski,* 286 F.3d at 664. The defendant argued that the plaintiff's common law and statutory claims for fraudulent concealment were barred by the Economic Loss Doctrine. *Id.* at 665. The U.S. District Court agreed with the defendant and concluded that no reason existed for treating a common law fraudulent concealment claim differently from a statutory claim raised under the UTPCPL. *Id.* The Third Circuit Court of Appeals affirmed the District Court's Order finding that the Economic Loss Doctrine barred the fraudulent concealment and UTPCPL claims asserted by the plaintiffs. *Id.* at 670–82.

 ¶ 15 In the instant case, we must determine whether the Economic Loss Doctrine applies to Employees' SWMA claims. To do so, we must examine the Pennsylvania Legislature's intent in enacting the SWMA and its relevant provisions. To ascertain the intent of the legislature, we turn to the rules of statutory construction.

> Our goal in statutory interpretation is to "ascertain and effectuate the intention of the General Assembly," and we strive to give effect to all the provisions in a statute. In so doing, we must begin with a presumption that our legislature did not intend any statutory language to

exist as mere surplusage. Accordingly, "whenever possible, courts must construe a statute so as to give effect to every word contained therein."

*Robson v. EMC Insurance Companies*, 785 A.2d 507, 511 (Pa.Super.2001) (citations omitted).

¶ 16 The purpose of the SWMA, as the Pennsylvania Legislature set forth in its provisions, is to:

1. [e]ncourage planning and management of storm water runoff in each watershed which is consistent with sound water and land use practices.

2. [a]uthorize a comprehensive program of storm water management designated to preserve and restore the flood carrying capacity of Commonwealth streams; to preserve to the maximum extent practicable natural storm water runoff regimes and natural course, current and cross-section water of the Commonwealth; and to protect and conserve ground waters and groundwater recharge areas.

3. [e]ncourage local administration and management of storm water consistent with the Commonwealth's duty as trustee of natural resources and the people's Constitutional right to the preservation of natural, economic, scenic, aesthetic, recreational and historic values of the environment.

32 P.S. § 680.3.

¶ 17 With regard to the civil remedies available under the SWMA, section 680.15 states that "[a]ny person *injured* by conduct which violates the provisions of section 13 [§ 680.13] may, in addition to any other remedy provided under this act, recover damages caused by such violation from the landowner or other responsible person." 32 P.S. § 680.15 (emphasis added). To determine the type of injury that

the Legislature is referring to, section 13 of the SWMA provides as follows:

### § 680.13 Duty of persons engaged in the development of land

Any landowner and any person engaged in the alteration or development of land which may affect storm water runoff characteristics shall implement such measure consistent with the provisions of the applicable watershed storm water plan as are reasonably necessary *to prevent injury to health, safety or other property*. Such measures shall include such actions as are required:

(1) to assure that maximum rate of storm water runoff is no greater after development than prior to development activities; or

(2) to manage the quantity, velocity and direction of resulting storm water runoff in a manner which otherwise adequately protects *health and property from possible injury*.

32 P.S. § 680.13 (emphasis added). When read together, section 13 establishes the duties owed to "prevent injury to health, safety, or other property," whereas section 15 provides a private cause of action for such violations of section 13, *i.e.*, injury to health, safety or other property. *See* 1 Pa.C.S.A. § 1903(b) (stating that in construing a statute, general expressions must be restricted to things and persons similar to those specifically enumerated in preceding language); *see also Housing Auth. of the County of Chester v. Pennsylvania State Civ. Serv. Comm.*, 556 Pa. 621, 640, 730 A.2d 935, 945 (1999) (holding that "in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute").

■ ¶ 18 The SWMA does not expand the types of damages that are required to support a recovery under a negligence the-

ory, *i.e.*, injury to health, safety or other property, to purely economic damages. The language of sections 13 and 15 is clear and unambiguous that injury to health, safety or other property are the only types of injury subject to recovery. *See Grom v. Burgoon,* 448 Pa.Super. 616, 672 A.2d 823 (1996) (holding that where the language of the statute is clear and unambiguous, the courts of the Commonwealth are without authority to disregard the plain meaning, as this is the intent of our legislature).

 ¶ 19 Furthermore, we conclude that the term "injury" as used by the SWMA is analogous to the "physical injury or property damage" requirements of the Economic Loss Doctrine. The Economic Loss Doctrine is concerned with two main factors: foreseeability and limitation of liability. As previously discussed, the Economic Loss Doctrine is enforced to bar purely economic claims because the tortfeasor has no knowledge of the contract or prospective relation and, therefore, no reason to foresee any harm to the plaintiff's interest. *Aikens,* 501 A.2d at 279. With regard to limitation of liability, this court stated in *Aikens* that "to allow a cause of action for negligent cause of purely economic loss would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action." *Id.* Here, as in *Aikens,* to permit recovery for negligent cause of purely economic loss is "inappropriate and a danger to our economic system." *Id.*

¶ 20 Accordingly, we conclude that Employees' claims for loss of wages and benefits do not fall within the scope of the term "injury," as used by the SWMA. By limiting the scope of the SWMA to those who have suffered an injury to health, safety or property, we do not believe that the intent or purpose of the SWMA is threatened, as Employees contend. The language of the SWMA is clear that the legislature did not intend to provide a remedy for purely economic damages in the absence of physical injury or property damage. Because Employees' damages are not the type of injuries contemplated by the SWMA, we conclude that the trial court properly applied the Economic Loss Doctrine and dismissed Employees' Complaint.

¶ 21 Order affirmed.