**Beecham v. American Life and Casualty Insurance Co.**

C.P. of Lackawanna County, no. 98 CV 3147.

*Kimberly D. Borland,* for plaintiffs.
*Mark H. Scoblionko,* for defendant.

NEALON, *J.,* December 19, 2003—Defendant has filed a motion for partial summary judgment with respect to plaintiffs' claims based upon unintentional conduct and submits that an earlier summary judgment ruling found the plaintiffs to be contributorily negligent as

a matter of law. Defendant has also presented another motion for summary judgment seeking to reopen an economic loss doctrine issue which was previously rejected by two other judges of this court. Since the prior summary judgment ruling never adjudged the plaintiffs to be contributorily negligent, nor has the defendant identified an intervening change in the controlling law warranting the reversal of the law of the case on the economic loss doctrine, both motions will be denied.

## I. FACTUAL BACKGROUND

Plaintiffs William D. Beecham and Dorothy V. Beecham have commenced this action against defendant American Life and Casualty Insurance Co. seeking to recover damages as a result of their loss of an annuity policy investment. On November 11, 1994, the Beechams purchased an annuity contract with American Life through its agent Patrick Idaspe for $176,243. American Life reportedly discovered that Idaspe had engaged in misconduct with another company, Beneficial Standard, involving his creation and use of fraudulent company letterhead. Therefore, by letter dated June 12, 1995, American Life notified Idaspe that his agency contract would be terminated on June 27, 1995. Additionally, an insurance wholesaler who acted as Idaspe's supervisor, Jack D. Aiken, forwarded a letter to American Life in which he recommended that Idaspe's annuity contract transactions be placed on "a watch list" by American Life.

However, American Life never informed the Beechams of its investigation and termination of Idaspe based upon his fraudulent conduct. Following his termination by American Life, Idaspe convinced the Beechams to

cancel their annuity contract with American Life and transfer their funds to another company. The Beechams followed Idaspe's advice, and although they originally received periodic statements from an entity identified as Equity Service Company, those statements later ceased thereby prompting the Beechams to contact Idaspe. Regrettably, the Beechams discovered that Idaspe had committed suicide and that the proceeds from the annuity policy had been lost.

The Beechams maintain that despite American Life's knowledge of Idaspe's fraudulent activity, it failed to notify its policyholders such as the Beechams regarding Idaspe's termination. The Beechams further contend that American Life neglected to heed Jack D. Aiken's recommendation that Idaspe's business be placed on "a watch list." According to the Beechams, if they had been so notified by American Life, they would not have liquidated their annuity policy with American Life and reinvested the proceeds with Idaspe.

The Beechams' complaint asserted causes of action for negligence (Count I), common-law fraud and deceit (Count II), violation of the Unfair Insurance Practices Act (Count III), violation of the Unfair Trade Practices and Consumer Protection Law (Count IV), breach of fiduciary duty (Count V) and recovery of punitive damages (Count VI). American Life filed preliminary objections in which it demurred "to the entire complaint" on the grounds that it did not owe the Beechams "a legal duty as would be required to support a viable cause of action" and that the complaint failed "to make out a viable basis for relief in that it is essentially a negligence claim for economic damages only, without injury to per-

son or property, and such a claim is not recognized under Pennsylvania law." (See Dkt. entry no. 6.) American Life also presented individual demurrers to Counts II, III, IV, V and VI of the complaint, as well as paragraphs 44 and 45 demanding damages "for physical harm and pain, mental anguish, and humiliation" and "loss of enjoyment of life." (*Id.,* pp. 2-6.) In its accompanying brief, American Life cited *Spivack v. Berks Ridge Corp. Inc.,* 402 Pa. Super. 73, 586 A.2d 402 (1990), and *Aikens v. Baltimore and Ohio Railroad Co.,* 348 Pa. Super. 17, 501 A.2d 277 (1985), in support of its contention that the economic loss doctrine bars any recovery in this case since no cognizable negligence action can exist which results solely in economic damages unaccompanied by physical injury or property damage. (Dkt. entry no. 7, p. 18.)

By order dated September 2, 1999, Senior Judge Jay W. Myers (specially presiding) sustained American Life's demurrer to the negligence and Unfair Insurance Practices Act claims and paragraphs 44 and 45 seeking recovery for pain and suffering, mental anguish, humiliation and loss of enjoyment of life. However, Judge Myers overruled the preliminary objections in all other respects, including American Life's objections predicated upon the alleged absence of a legal duty, the applicability of the economic loss doctrine, and the legal viability of the Beechams' claims for fraud and deceit, breach of fiduciary duty, violation of the UTP/CPL and punitive damages. (Dkt. entry no. 13.)

After the parties conducted discovery, American Life filed a motion for summary judgment on April 1, 2002, requesting the dismissal of the remaining claims for fraud

and deceit, breach of fiduciary duty, violation of the UTP/ CPL and punitive damages. (*Id.,* no. 22, ¶¶34-38.) American Life's supporting brief renewed its earlier challenges premised upon the purported absence of a legal duty or causal connection, (*id.,* no. 20, pp. 12-25), the application of the economic loss doctrine (*id.,* pp. 25-26), and the validity of the Beechams' legal theories for fraud and deceit, breach of fiduciary duty, violation of the UTP/ CPL and punitive damages. (*Id.,* pp. 26-36.)

By memorandum and order dated January 17, 2003, Judge Carmen D. Minora concluded "that material questions of fact exist and that each count of the complaint is appropriate for submission to a jury." Hence, Judge Minora denied American Life's motion for summary judgment "on all bases." (Dkt. entry no. 28, p. 14.) In his comprehensive analysis of the parties' legal duty issue,[1] Judge Minora remarked:

"This court finds that American did owe the Beechams a duty to disclose based upon the above referenced real estate scenario [in *Bortz v. Noon,* 556 Pa. 489, 502, 729 A.2d 555, 562 (1999)]. American had access to Mr. Idaspe's clients, they knew of his allegedly deceptive

---

1. The determination of whether a duty exists in a particular case involves the weighing of several discreet factors, including: (1) the relationship between the parties; (2) the social utility of the defendant's conduct; (3) the nature of the risk imposed and the foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the defendant; and (5) the overall public interest in the proposed solution. *Sharpe v. St. Luke's Hospital,* 573 Pa. 90, 96, 821 A.2d 1215, 1219 (2003); *R.W. v. Manzek,* 838 A.2d 801, 807 n.9 (Pa. Super. 2003). No single factor is dispositive and a duty will be found to exist where the balance of these five factors weighs in favor of placing such a burden on a defendant. *Phillips v. Cricket Lighters,* 841 A.2d 1000, 1008-1009 (Pa. 2003).

practices and they certainly knew of his termination; American was clearly in a better position than were the Beechams. The Beechams are not without some degree of fault, they too had a responsibility to verify Mr. Idaspe's credibility, however, from the instant facts, it appears as though American should have disclosed whatever information they had to Mr. Idaspe's clients, particularly his termination. . . .

"An annuity policy carried by a particular company requires more attention and input than does a life insurance policy. While carrying an annuity policy for the benefit of its recipients, the company must exercise its best judgment in determining how to protect and increase the recipients' investment. This court believes that this distinction mandates a closer relationship between the beneficiary of an annuity and the company carrying that annuity than is mandated between an insured and the insurance company; the annuity carrier must act for the benefit of the policyholder. As such, we find that a fiduciary relationship does exist when an annuity, rather than a life insurance policy, is involved." (*Id.,* pp. 11-12.)

Following Judge Minora's denial of American Life's motion for summary judgment, American Life presented an application seeking to have Judge Minora certify his ruling for an interlocutory appeal pursuant to Pa.R.A.P. 1311(b) and 42 Pa.C.S. §702(b). On February 13, 2003, Judge Minora denied American Life's request for certification of an interlocutory order for appeal. (*Id.,* nos. 29-31.) Approximately two weeks later, American Life filed the instant motion for partial summary judgment on February 28, 2003. (*Id.,* no. 33.) Before the Beechams had an opportunity to respond to that motion, Ameri-

can Life filed an additional motion for summary judgment on April 21, 2003. (*Id.,* no. 38.) By notice dated July 16, 2003, the court administrator assigned American Life's motions to the undersigned for oral argument on October 29, 2003.

The gravamen of American Life's motion for partial summary judgment is that Judge Minora allegedly found the Beechams contributorily negligent as a matter of law by virtue of the above-quoted paragraphs of his memorandum dated January 17, 2003. Specifically, American Life submits that "[a]s a result of the aforesaid finding of law by Judge Minora, plaintiffs are culpable of contributory negligence as a matter of law." (*Id.,* no. 33, ¶4.) American Life posits that since the Comparative Negligence Act applies only to actions "for negligence resulting in death or injury to person or property," 42 Pa.C.S. §7102(a), any contributory negligence by the Beechams operates as a total bar to any recovery, except for claims based upon intentional, wanton, willful or reckless conduct. (*Id.,* ¶¶5-6.)

American Life's third motion for summary judgment, which was filed on April 21, 2003, renews its economic loss doctrine arguments which were previously considered and rejected by Judge Myers and Judge Minora. American Life contends that the holding in *Adams v. Copper Beach Townhome Communities,* 816 A.2d 301 (Pa. Super. 2003), which was issued one week after Judge Minora's ruling constitutes an intervening change in the controlling law warranting the grant of summary judgment. In that vein, American Life asserts that the *Adams* court "altered the law in this Commonwealth and has ruled that the economic loss doctrine bars claims based

on fraud, intentional conduct, or statutory fraud under the Unfair Trade Practices and Consumer Protection Law." (Dkt. entry no. 38, ¶5.) Thus, American Life once again seeks the dismissal of all claims in this matter. (*Id.*, ¶¶7-9.) The Beechams have submitted a brief in opposition to the summary judgment motions and American Life has filed an initial brief, "supplemental brief," "second supplemental brief" and "third supplemental brief." (*Id.*, nos. 34-35, 39-40, 42.) Following the completion of oral argument on October 29, 2003, this matter was submitted for a decision.

## II. DISCUSSION

### (A) *Standard of Review*

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Phillips v. Cricket Lighters,* 841 A.2d 1000, 1004 (Pa. 2003). When considering a motion for summary judgment, the record must be viewed in a light most favorable to the non-moving party with all doubts as to the existence of a factual issue being resolved against the movant. *Federal National Mortgage Association v. Citiano,* 834 A.2d 645, 647 (Pa. Super. 2003). Summary judgment may be granted only if it is clear and free from doubt that the moving party is entitled to judgment in its favor. *Brotech Corp. v. Delmarva Chemicals Inc.,* 831 A.2d 613, 615 (Pa. Super. 2003); *Ryan v. Asbestos Corp. Ltd.,* 829 A.2d 686, 688 (Pa. Super. 2003).

## (B) *Contributory Negligence Defense*

The Comparative Negligence Act, 42 Pa.C.S. §7102, applies only to negligence actions which result in death or injury to person or property and is inapplicable to negligence claims involving purely monetary loss which is unaccompanied by personal injury or property damage. *Gorski v. Smith,* 812 A.2d 683, 701-702 (Pa. Super. 2002) (*reargument denied,* January 7, 2003); *Rizzo v. Michener,* 401 Pa. Super. 47, 53-54, 584 A.2d 973, 976 (1990). If the Comparative Negligence Act does not apply due to the absence of personal injury or property damage, the parties revert to the doctrine of contributory negligence which bars recovery if the plaintiff's negligence has contributed in any way to the economic loss. *Wescoat v. Northwest Savings Association,* 378 Pa. Super. 295, 302-303, 548 A.2d 619, 623 (1988). It is undisputed that the Beechams have not suffered personal injury or damage to tangible property such that 42 Pa.C.S. §7102 does not govern their claims. American Life submits that Judge Minora found the Beechams contributorily negligent as a matter of law as a result of which they are precluded from recovering damages except for intentional or wanton conduct. See *Hutchison ex rel. Hutchison v. Luddy,* 763 A.2d 826, 848 (Pa. Super. 2000) (when willful or wanton misconduct is involved, contributory or comparative negligence should not be applied), *appeal denied,* 567 Pa. 743, 788 A.2d 377 (2001).

Contrary to American Life's contention, Judge Minora did not expressly find the Beechams to be contributorily negligent. In fact, the issue of the Beechams' alleged negligence was not even raised by American Life's first

motion for summary judgment and, as such, would not have been an appropriate subject for determination via the summary judgment ruling. See *Rogers v. Williams,* 420 Pa. Super. 396, 400, 616 A.2d 1031, 1033 (1992) (a trial court may not raise a defense sua sponte on behalf of a party and enter summary judgment on that basis). More importantly, in light of the contributory negligence issue raised by American Life in its motion for partial summary judgment, Judge Minora has filed an "Order of clarification" on this date confirming beyond any doubt that his memorandum "never indicated that plaintiffs were culpable of contributorily negligent conduct as a matter of law nor were plaintiffs judicially determined to be at fault which could arguably require a threshold finding of fact within the sole province of a jury's fact-finding responsibility." (Dkt. entry no. 44, ¶8.) As Judge Minora has aptly noted in his clarification order, "[w]hile the plaintiffs had a responsibility to verify Mr. Idaspe's credibility, the best information for making an intelligent judgment as to Mr. Idaspe's credibility was knowingly and intentionally withheld from plaintiffs and all of Mr. Idaspe's other clients by the defendant. Thus, plaintiffs were denied their best chance to judge the deceased Mr. Idaspe's credibility." (*Id.,* ¶11.) See also, *Gorski,* 812 A.2d at 703 ("[i]t is not contributory negligence to fail to guard against the lack of ordinary care by another.")

There may be a judicial declaration of contributory negligence "only in clear cases where the facts are indisputably fixed and there can be no reasonable doubt as to the inferences properly to be drawn from them." *Sargeant v. Ayers,* 358 Pa. 393, 397, 57 A.2d 881, 883 (1948). If there is any evidence upon which reasonably minded

individuals might disagree as to whether the plaintiff was chargeable with negligence which contributed to the ultimate loss, then the question of such contributory negligence is for the jury, not the court, to determine. *Heffernan v. Rosser*, 419 Pa. 550, 555, 215 A.2d 655, 658 (1966); *Hawthorne v. Dravo Corp., Keystone Division*, 313 Pa. Super. 436, 445, 460 A.2d 266, 270 (1983). Judge Minora's reference to the Beechams' responsibility was, at most, explanatory dictum in his legal duty analysis, (see n.1, *supra*), and was never intended to constitute a conclusive finding of contributory negligence. Inasmuch as Judge Minora has clearly stated that he did not make such a finding of contributory negligence, American Life's motion for partial summary judgment will be denied.

## (C) *Economic Loss Doctrine*

In its other motion for summary judgment, American Life seeks to revisit the economic loss doctrine arguments which were previously rejected by Senior Judge Myers and Judge Minora. Under the coordinate jurisdiction rule, a judge involved in the later phases of a case generally should not reopen or entertain motions which have been decided by another judge of the same court at an earlier stage of the case. *Zane v. Friends Hospital*, 575 Pa. 236, 836 A.2d 25, 29 (2003); *Argenta*, 104 Lacka. Jur. 430, 443 (2003). Departure from this rule is allowed only in exceptional circumstances such as when there has been an intervening change in the controlling law or facts, *Rivera v. Home Depot*, 832 A.2d 487, 491-92 (Pa. Super. 2003), or the prior holding was clearly erroneous and would create a manifest injustice if followed. *Zane, su-*

*pra,* 836 A.2d at 29; *Safe Harbor Water Power Corp. v. Williams,* 825 A.2d 733, 741 (Pa. Commw. 2003).

Generally, the "economic loss doctrine" prohibits plaintiffs from recovering in tort for economic losses which flow only from a contract. *Debbs v. Chrysler Corp.,* 810 A.2d 137, 164 n.32 (Pa. Super. 2002), *appeal denied,* 574 Pa. 742, 829 A.2d 311 (2003). In *Aikens, supra,* the Superior Court concluded that recovery would not be allowed in a negligence action for purely economic loss that was not accompanied by physical injury or damage to tangible property. In so holding, the *Aikens* court specifically held that "[t]he reason a plaintiff cannot recover stems from the fact that the negligent actor has no knowledge of the contract or prospective relation and thus has no reason to foresee any harm to the plaintiff's interest." *Aikens,* 348 Pa. Super. at 21, 501 A.2d at 279. Instantly, American Life had knowledge of the annuity contract and business relation between the Beechams and Idaspe, and after it was notified of Idaspe's fraudulent conduct, American Life arguably had a reason to foresee potential harm to the Beechams' interest. Presumably for that reason, American Life's economic loss doctrine arguments were rejected by Senior Judge Myers and Judge Minora.

American Life asserts that the holding in *Adams* reflects a substantial change in the controlling law and warrants departure from the coordinate jurisdiction rule. According to American Life, *Adams* held "that the economic loss doctrine bars claims based on fraud, intentional conduct, or statutory fraud under the Unfair Trade Practices and Consumer Protection Law." (Dkt. entry no. 38, ¶5.) Based upon our careful reading of *Adams,* we do

not accept American Life's proffered interpretation of the *Adams* decision.

In *Adams,* employees of a tire manufacturing plant brought an action under the Storm Water Management Act (SWMA) against the plant's neighboring property owners who allegedly had caused water damage to the plant which precipitated a temporary closure and resulted in lost wages for the employees. In the words of the *Adams* court, the "sole issue" presented for review was "whether the common-law economic loss doctrine applied to bar a statutory cause of action under the SWMA." *Adams,* 816 A.2d at 304. Following its analysis of the legislative intent and express language of the SWMA, the Superior Court found that the employees' claims for loss of wages and benefits do not fall within the scope of the term "injury" as used by the SWMA inasmuch as "[t]he language of the SWMA is clear that the legislature did not intend to provide a remedy for purely economic damages in the absence of physical injury of property damage." *Id.* at 307. To that end, the *Adams* court cited *Aikens* for the proposition that "the economic loss doctrine is enforced to bar purely economic claims because the tort-feasor has no knowledge of the contract or prospective relation and, therefore, no reason to foresee any harm to the plaintiff's interest." *Id.*

*Adams* constitutes an amplification of the economic loss doctrine only to the extent that it applied that doctrine to claims under the SWMA. It is beyond cavil that the Beechams are not advancing claims under the SWMA, and for that reason, *Adams* does not justify reconsideration of the previous summary judgment ruling under the coordinate jurisdiction rule. American Life's

subsequent reliance upon *David Pflumm Paving & Excavating Inc. v. Foundation Services Co.,* 816 A.2d 1164 (Pa. Super. 2003), is likewise misplaced since that decision does not stand for the proposition that the economic loss doctrine precludes "claims based on fraud, intentional conduct, or statutory fraud." Quite to the contrary, the *Foundation Services* court distinctly stated that:

"There are no Pennsylvania Supreme Court or Superior Court cases that indicate that the economic loss doctrine bars a claim for fraudulent misrepresentation. However, for the reason stated in the text, we need not address that issue in this case." (*Id.* at 1171 n.2.)

Consequently, since it *still* is not clear and free from doubt that American Life is entitled to judgment in its favor as a matter of law, the motion for summary judgment based upon the economic loss doctrine will once again be denied.

## ORDER

And now, December 19, 2003, upon consideration of the motion for partial summary judgment of defendant American Life and Casualty Insurance Co. and the motion for summary judgment of defendant American Life and Casualty Insurance Co., the memoranda of law submitted by the parties and the oral argument of counsel on October 29, 2003, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) defendant's motion for partial summary judgment is denied; and

(2) defendant's motion for summary judgment is denied.