**McELWEE GROUP, LLC, Plaintiff,**

v.

**MUNICIPAL AUTHORITY OF the BOROUGH OF ELVERSON, et al., Defendants.**

**Civil Action No. 06–2447.**

United States District Court, E.D. Pennsylvania.

March 6, 2007.

(1982) ("Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official.")

Anthony F. Visco, Jr., Ballard Spahr Andrews & Ingersoll, L.L.P., Philadelphia, PA, Mario A. Iavicoli, Haddonfield, NJ, for Plaintiff.

Joseph F. Trinity, Gebhardt & Kiefer, Clinton, NJ, Ralph J. Bellafatto, Ralph J. Bellafatto, PC, Easton, PA, Timothy J. Woolford, Woolford Law, P.C., Lancaster, PA, for Defendants.

### MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Defendant Spotts, Stevens & McCoy, Inc. (SSM) has moved to dismiss the sole remaining claim against it, for fraud, on the grounds that (1) Plaintiff did not comply with the certificate of merit requirement and/or (2) the fraud claim is barred by the economic loss doctrine.

For the reasons that follow, SSM's motion to dismiss will be denied.

## I. BACKGROUND

Plaintiff is the McElwee Group, LLC, a general contractor. Defendants are SSM, an engineering firm, and the Municipal Authority of the Borough of Elverson (MABE),[1] a governmental entity.

SSM, pursuant to its contract with MABE, performed engineering work for the draining of a lagoon and the construction of a wastewater facility in the Borough of Elverson, Chester County, Pennsylvania. Then, McElwee entered into two contracts with MABE to drain the lagoon and construct the wastewater facility. There is no contract between McElwee and SSM.

The gist of McElwee's complaint is that MABE and SSM fraudulently misrepresented to McElwee the complexity of the drainage and construction project. As an example, McElwee alleges that MABE and SSM represented that McElwee would have to remove only 100 tons of sludge from the lagoon, when in fact McElwee was forced to remove over 4400 tons of sludge. McElwee alleges that it suffered significant damages as a result of these misrepresentations.

McElwee has three claims still pending: Count I against MABE, for breach of the phase # 1 contract; Count II against MABE, for breach of the phase # 2 contract; and Count III against SSM and MABE, for misrepresentation/fraud.

The only question for the Court is whether Count III against SSM, for misrepresentation/fraud, should be dismissed.

## II. DISCUSSION

### A. *Motion to Dismiss Standard*

A motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) serves to test the sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). Therefore, the court must accept as true all factual allegations made in the complaint and all reasonable inferences that can be drawn therefrom. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). The motion should be granted only if "no relief could be granted under any of facts which could be proved." *Id.*

### B. *Application*

McElwee has asserted a claim for fraud/misrepresentation against SSM.[2] SSM argues that the fraud claim cannot proceed because (1) McElwee failed to comply with Pennsylvania's certificate of merit requirement and/or (2) the fraud claim is barred by the economic loss doctrine.

### 1. *Certificate of Merit Requirement*

SSM argues that McElwee's fraud claim should be dismissed because McElwee failed to comply with the Pennsylvania civil procedure rule that requires a plaintiff in a professional malpractice action to submit a

---

**1.** The Borough of Elverson has been dismissed as a defendant by stipulation of the parties.

**2.** In Pennsylvania, a claim for fraud requires "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresenta-

tion; and (6) the resulting injury was proximately caused by the reliance." *Hart v. Arnold,* 884 A.2d 316, 339 (Pa.Super.Ct.2005), *appeal denied,* 587 Pa. 695, 897 A.2d 458 (2006).

In its first motion to dismiss, SSM argued that McElwee failed to plead the necessary elements for a fraud claim under Pennsylvania law. However, McElwee has since filed an amended compliant, which appears to rectify these alleged deficiencies.

certificate of merit within 60 days of filing the action. SSM's argument has no merit.

Pennsylvania Rule of Civil Procedure 1042.3 requires a certificate of merit to be filed "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard." The certificate must be signed by the plaintiff's attorney and attest that either (1) a licensed professional has submitted a written statement to this effect or (2) such a professional's opinion is unnecessary to prosecute the claim. The failure to submit such a certificate is, in state court, fatal to a plaintiff's claim: under Rule 1042.6, if, after 60 days, the plaintiff has not submitted the certificate, the defendant can direct the prothonotary to enter a judgment of non pros.

■ The procedure in the federal system, in a case based on diversity jurisdiction and applying Pennsylvania law, is slightly different: there is no procedural mechanism for a defendant to ask the clerk of court to dismiss a claim. *See Abdulhay v. Bethlehem Medical Arts, L.P.,* 2005 WL 2416012, at *9 (E.D.Pa. Sept. 28, 2005) (Gardner, J.). Rather, failure to submit the certificate is a possible ground for dismissal by the district court, when properly presented to the court in a motion to dismiss.[3] *See Hartman v. Low Sec. Corr. Inst. Allenwood,* 2005 WL 1259950, at *3 (M.D.Pa. May 27, 2005); *Scaramuzza v. Sciolla,* 345 F.Supp.2d 508, 511 (E.D.Pa.2004) (Baylson, J.). Thus, SSM's contention that McElwee's fraud claim should be dismissed for its failure to file a certificate of merit is properly before the Court as a grounds for dismissal under Rule 12(b)(6).

■ Rule 1042.3, however, is inapplicable to McElwee's fraud claim. The Rule, by its terms, applies only to claims for professional malpractice—or negligence in the performance of one's professional duties. SSM has pointed to no Pennsylvania authority for the proposition that Rule 1042.3 applies to claims based on intentional torts, and for good reason. If a plaintiff alleges that a building collapsed because the architect deviated from acceptable professional standards, then the plaintiff must include a certificate under the Rule. If, however, a plaintiff alleges that an architect fraudulently induced the plaintiff to enter a contract with the architect to design a building, there is no certificate requirement under Pennsylvania law. Merely suing a professional does not require a certificate of merit; only suing a professional for violating professional standards does. Suing a professional for fraud requires nothing more than suing one's neighbor for fraud. *See Krauss v. Claar,* 879 A.2d 302, 306–07 (Pa.Super.Ct.2005) (holding that the certificate requirement is inapplicable in an action against an attorney for, inter alia, intentional misrepresentation, because plaintiffs did not sue the attorney for professional negligence or malpractice).

SSM argues that Count III is, like Count IV (which has been dismissed, *see* doc. no. 34), a negligence claim. This is

---

**3.** The weight of authority holds that Pennsylvania's certificate of merit requirement is a substantive rule, not a procedural requirement, and thus under *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), must be applied by federal courts sitting in diversity. *See, e.g., Abdulhay,* 2005 WL 2416012, at *7 ("Pennsylvania Rule 1042.3 mandating a certificate of merit in professional negligence claims, is substantive under the *Erie* Rule and must be applied as such by the court."); *Scaramuzza,* 345 F.Supp.2d at 510 ("[T]he Pennsylvania certificate of merit rule will be applied by this Court as controlling, substantive state law."); *see also Chamberlain v. Giampapa,* 210 F.3d 154, 161 (3d Cir.2000) (holding that New Jersey's similar affidavit of merit requirement was a substantive rule).

untrue. Count III, though it could have been worded more artfully, asserts a claim for "misrepresentation/fraud." The word "intention" or "intentionally" is used ten times in the paragraphs comprising the claim. Thus, Count III asserts a claim for fraud, an intentional tort, and is not subject to the Rule 1042.3 certificate requirement.

Therefore, SSM's motion to dismiss the claim against it based on McElwee's failure to file a certificate of merit will be denied.

### 2. Economic Loss Doctrine

■ SSM argues that McElwee's fraud claim is barred by the economic loss doctrine.[4] The contours of the economic loss doctrine in Pennsylvania are, to put it mildly, presently unclear.

However, regardless of the merits of SSM's economic loss doctrine argument, the Pennsylvania Supreme Court case of *Bilt–Rite Contractors, Inc. v. Architectural Studio*, 581 Pa. 454, 866 A.2d 270 (2005), which is almost directly on point, mandates that McElwee's fraud claim be allowed to proceed.[5] There, a school district entered into a contract with an architect, whereby the architect prepared drawings for the construction of a new school. *Id.* at 272. On the basis of these drawings, the school district solicited bids from contractors for the construction of the school. *Id.* Bilt–Rite submitted the winning bid, and its subsequent contract with the school board

specifically referred to the architect's drawings. *Id.* Bilt–Rite and the architect never entered into a contract. *Id.*

Based on errors in the architect's plans, Bilt–Rite was forced to substantially increase its construction costs, and Bilt–Rite sued the architect for negligent misrepresentation. *Id.* The architect filed a demurrer, arguing that Bilt–Rite's action was barred by the economic loss doctrine and that Bilt–Rite could not recover because Bilt–Rite and the architect were not in contractual privity. *Id.* at 273. The trial court sustained the demurrer and dismissed the complaint; the superior court affirmed. *Id.* The Pennsylvania Supreme Court reversed, holding that the architect could be liable to Bilt–Rite for negligent misrepresentation, in spite of their lack of contractual privity and the traditional bar against recovery in tort for economic losses. *Id.* at 288.

In *Bilt–Rite*, the Pennsylvania Supreme Court explicitly adopted *Restatement (Second) of Torts* 552.[6] 866 A.2d at 285. Illustration 9 to 552 offers a useful example:

The City of A is about to ask for bids for work on a sewer tunnel. It hires B Company, a firm of engineers, to make boring tests and provide a report showing the rock and soil conditions to be encountered. It notifies B Company that the report will be made available to bidders as a basis for their bids and that it is expected to be used by the success-

---

4. The economic loss doctrine bars causes of action in tort where the only injury is "economic loss." *See 2–J Corp. v. Tice*, 126 F.3d 539, 541 (3d Cir.1997). The doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir.1995).

5. Neither party cited *Bilt–Rite* to this Court.

6. *Restatement (Second) of Torts* 552(1) reads:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

ful bidder in doing the work. Without knowing the identity of any of the contractors bidding on the work, B Company negligently prepares and delivers to the City an inaccurate report, containing false and misleading information. On the basis of the report C makes a successful bid, and also on the basis of the report D, a subcontractor, contracts with C to do a part of the work. By reason of the inaccuracy of the report, C and D suffer pecuniary loss in performing their contracts. B Company is subject to liability to C and to D.

*Restatement (Second) Torts* 552, ill. 9. The Bilt–Rite court parsed the *Restatement* and the illustration to come its conclusion:

[A] plaintiff is not barred from recovering economic losses simply because the action sounds in tort rather than contract law. Here, Bilt–Rite had no contractual relationship with [the architect]; thus, recovery under a contract is not available to Bilt–Rite. Having found that Bilt–Rite states a viable claim for negligent misrepresentation under Section 552, and that privity is not a prerequisite for maintaining such an action, logic dictates that Bilt–Rite not be barred from recovering the damages it incurred, if proven. Indeed, to apply the economic loss doctrine in the context of a Section 552 claim would be nonsensical: it would allow a party to pursue an action only to hold that, once the elements of the cause of action are shown, the party is unable to recover for its losses. Thus, we hold that the economic loss rule does not apply to claims

of negligent misrepresentation sounding under Section 552.

866 A.2d at 288.

As the court ultimately held, "a building contractor may maintain a negligent misrepresentation claim against an architect for alleged misrepresentations in the architect's plans for a public construction contract, where there was no privity of contract between the architect and the contractor, but the contractor reasonably relied upon the misrepresentations in submitting its winning bid and consequently suffered purely economic damages as a result of that reliance." *Id.* at 272.

■ Here, SSM, the engineer on the project, is akin the architect in *Bilt–Rite*. McElwee, the contractor on the project, is akin the contractor in *Bilt–Rite*. Even though McElwee and SSM had no contract, SSM should have reasonably known that a contractor would rely on its engineering plans, and therefore SSM can be liable to that contractor for any alleged misrepresentations in its plans. This is the case even if, as here, the contractor alleges only economic damages.

Of course, the contractor's claim in *Bilt–Rite* was for *negligent* misrepresentation; here, McElwee's claim is for *intentional* misrepresentation, or fraud. The Pennsylvania Supreme Court's policy considerations apply even more forcefully in an intentional misrepresentation context. If Pennsylvania allows liability for an architect or engineer who is negligent in preparing a report, surely it would allow liability for an one who is reckless or fraudulent in preparing the report.[7]

---

7. At oral argument, counsel for SSM argued that the Court is obligated to follow the Third Circuit's prediction that in Pennsylvania the economic loss doctrine would bar claims for intentional torts, *see Werwinski. v. Ford Motor Co.,* 286 F.3d 661, 680–81 (3d Cir.2002), in spite of the Pennsylvania Supreme Court's decision in *Bilt–Rite,* because *Bilt–Rite* dealt only with unintentional torts.

Traditionally, the economic loss doctrine only barred causes of action in tort for negligence or strict liability. *See 2–J Corp.,* 126 F.3d at 541 (citing *Aikens v. Baltimore & Ohio R.R. Co.,* 348 Pa.Super. 17, 501 A.2d 277, 279 (1985)). While it is true that the Third Circuit recently held in *Werwinski* that Pennsylvania's economic loss doctrine would also bar claims for intentional torts, at least two lower court cases have come to the opposite conclusion,

## III. CONCLUSION

At this stage of the proceedings, accepting as true the factual allegations in the complaint and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that McElwee has stated a sufficient fraud claim against SSM. The fraud claim is neither subject to the Pennsylvania certificate of merit requirement nor barred by the economic loss doctrine.

An appropriate Order follows.

### ORDER

**AND NOW,** this **6th** day of **March 2007,** following a hearing on the record, it is hereby **ORDERED** that Defendant Spotts, Stevens & McCoy, Inc.'s motions to dismiss (doc. nos. 7, 28) are **DENIED** for the reasons stated in the accompanying Memorandum.

**IT IS FURTHER ORDERED** that Defendant Spotts, Stevens & McCoy, Inc.'s first motion to file a reply brief (doc. no. 33) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Spotts, Stevens & McCoy, Inc.'s first motion for clarification of February 12, 2007, Order (doc. no. 36) is **DENIED AS MOOT.**

**AND IT IS SO ORDERED.**

post-*Werwinski.* *See O'Keefe v. Mercedes–Benz USA, LLC,* 214 F.R.D. 266, 277 (E.D.Pa.2003) (Van Antwerpen, J.) ("Pennsylvania's economic loss doctrine is inapplicable to intentional torts."); *Oppenheimer v. York Int'l,* 2002 WL 31409949, at *2 (Pa.Ct.C.P. Oct. 25, 2002) ("[T]his Court has not extended the economic loss doctrine to cover intentional torts.").

Regardless, the Pennsylvania Supreme Court decision in *Bilt–Rite* is controlling here. *See Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) ("[S]tate courts are the ultimate expositors of state law. . . .").