NEW HAMPSHIRE INSURANCE
COMPANY a/s/o WHYY,
Inc., Plaintiff,

v.

DIELECTRIC COMMUNICATIONS,
INC., et al., Defendants.

Civil Action No. 11–7263.

United States District Court,
E.D. Pennsylvania.

June 25, 2012.

John J. Delany, III, Delany & O'Brien, Woodbury, NJ, Oleh V. Bilynsky, Delany & O'Brien, Philadelphia, PA, for Plaintiff.

John J. Haggerty, Stephanie B. Fineman, Fox Rothschild LLP, Warrington, PA, for Defendants.

## MEMORANDUM

ANITA B. BRODY, District Judge.

Plaintiff New Hampshire Insurance Co. ("NHIC"), as subrogee of WHYY, Inc., ("WHYY") brought a state-court action against Defendant Dielectric Communications, Inc. (n/k/a SPX Communication Technology) ("SPX"),[1] John Doe (1–5), and John Smith, Inc. (1–5) for negligence (Count I) and breach of contract (Count II) stemming from a written agreement for the delivery and installation of a transmitter antenna. NHIC seeks $177,573.00, interest, court costs, and counsel fees. SPX removed this case to federal court under 28 U.S.C. § 1441(b) and moved to dismiss all counts. Federal diversity jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1). For the reasons set forth below, SPX's motion to dismiss will be denied.[2]

## I. BACKGROUND

Plaintiff NHIC is incorporated in the Commonwealth of Pennsylvania and has its principal place of business in New York. Defendant SPX is incorporated in Delaware and has its principal place of business in North Carolina. NHIC, as subrogee of WHYY, brings this action for negligence and breach of contract against

1. In the caption of the state court complaint, Plaintiff listed the lead Defendant as Dielectric Communications, Inc., n/k/a SPX Communication Technology. In its notice of removal, Defendant SPX Corporation noted that it was incorrectly named and that it should have been listed as SPX Corporation. For the sake of clarity, I will refer to Defendant as SPX.

2. The facts are stated most favorably to the Plaintiff.

SPX, John Doe (1–5), and John Smith, Inc. (1–5).[3]

On September 20, 2002, WHYY contracted with SPX, which agreed to deliver and install a transmitter antenna as part of WHYY's larger FM antenna system. Doc. No. 1, Ex. A ("Complaint"); Doc. No. 3, Ex. A ("Contract"). SPX was negligent and careless in installing the defective transmitter antenna and breached its contract by improperly installing an already defective transmitter antenna and then failing to maintain replacement parts. Complaint ¶¶ 15–17. The improper installation and defects damaged the transmitter antenna and other components of the FM antenna system. Complaint ¶¶ 15–16.

Under WHYY's insurance policy, NHIC paid $177,573.00 to repair and replace the damaged components of the FM antenna system. Complaint ¶ 8.

## II. LEGAL STANDARD

A motion to dismiss should be granted under Rule 12(b)(6) if the moving party "under any reasonable reading of the complaint ... may be entitled to relief." *Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir.2010) (internal quotation marks omitted). The complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949,

173 L.Ed.2d 868 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir.2006). This "assumption of truth" is "inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949–50.

Generally, on a motion to dismiss, a court is restricted to consider only the pleadings in the complaint. When, however, a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997). Furthermore, a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

---

**3.** John Doe 1–5 and John Smith, Inc. 1–5 represent fictitious individuals and corporate entities, respectively, which NHIC cannot identify at this time. NHIC alleges that these Defendants "could have been involved in various parts of the design, construction, purchasing, ordering and installation of the FM antenna system including but not limited to the transmitter antenna." Doc. No. 1, Ex. A

¶¶ 21, 22. Defendant SPX filed this motion to dismiss on its own, and the motion only addresses the claims against SPX (Count I for Negligence and Count II for Breach of Contract). It should be noted that no motion has been brought against John Doe (1–5) and John Smith, Inc. (1–5) and therefore the parties are not addressed in this opinion.

Here, Plaintiff NHIC alleges that Defendant SPX breached its contract with WHYY. SPX attached the contract to its motion to dismiss, and NHIC's claims are based on the contract. Therefore, it is prudent to consider the contract without converting SPX's motion to dismiss into a motion for summary judgment.

## III. DISCUSSION

The contract provided that it be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. Contract ¶ 12(h).

█ In deciding state law issues, the state law as interpreted by the state's highest court controls. *Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir.2003). When the state's highest court has not addressed the matter in question, a federal court must predict how the state's highest court would resolve the issue. *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1373 n. 15 (3d Cir.1996). If the state's highest court has not discussed the issue, a district court may consider the decisions of state intermediate appellate courts. *Paolella v. Browning–Ferris, Inc.*, 158 F.3d 183, 189 (3d Cir.1998). A Third Circuit Court of Appeals opinion on the issue controls.

### A. Count I: Negligence

SPX argues that NHIC's negligence claim should be dismissed under the (1) economic loss doctrine and under the (2) gist of the action doctrine. Mot. Dismiss 4.

#### i. Economic Loss Doctrine

█ Under Pennsylvania's economic loss doctrine, no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage. *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir.2008) (citing *Adams v. Copper Beach Townhome Cmtys., L.P.*, 816 A.2d 301, 305 (Pa.Super.2003)). This is based upon the need to restrict foreseeability and limit liability. *See Adams*, 816 A.2d at 307. The economic loss doctrine stems from the admiralty products liability case *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In *East River*, the plaintiff chartered a supertanker, and the tanker's turbines malfunctioned. Plaintiff sued the turbine manufacturer in tort, but the only alleged damage was to the turbines themselves. In ruling against the plaintiff, the Supreme Court reasoned that damage to a product itself does not mirror a products-liability claim. "[T]he injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." *Id.* at 867–68, 106 S.Ct. 2295. The Third Circuit has "predicted that the Pennsylvania Supreme Court would adopt the version of the economic loss doctrine that the United States Supreme Court developed in *East River S.S. Corp.*" *Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 103 n. 10 (3d Cir.2001).

Here, two commercial parties signed a contract for the delivery and installation of an FM transmitter antenna.[4] NHIC claims that the economic loss doctrine does not apply to its claim because SPX's negligence not only damaged the product itself (the transmitter antenna) but also other components of the overall antenna system,

---

**4.** In *Werwinski v. Ford Motor Co.*, the Third Circuit held that the economic loss doctrine is not limited to transactions between commercial parties. 286 F.3d 661, 672 (3d Cir.2002).

Nonetheless, it is worth noting that both parties here are sophisticated commercial entities with comparable bargaining power.

such as two of the six HD directional antennas. Opp'n Mot. Dismiss 4. In support of its argument, NHIC cites *2–J Corp. v. Tice*, in which plaintiff bought a pre-engineered warehouse from defendant manufacturer. 126 F.3d 539 (3d Cir.1997). Plaintiff then sued defendant manufacturer to recover in tort when the warehouse collapsed and damaged the plaintiff's inventory inside the warehouse. The Third Circuit overturned the lower court's grant of summary judgment for the manufacturer and remanded the case for further proceedings. Interpreting *East River*, the Third Circuit explained "that while tort recovery is barred for damage a product causes to itself, such recovery is available for damage the failing product causes to 'other property.'" *Id.* at 542 (citing *East River*, 476 U.S. at 867, 870, 106 S.Ct. 2295). And in an attempt to determine what constitutes "other property," the Third Circuit looked to *Saratoga Fishing Co. v. J.M. Martinac & Co.*, in which the Supreme Court attempted to differentiate between the property itself and "other property." 520 U.S. 875, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997). In *Saratoga Fishing Co.*, plaintiff was a secondary purchaser of a fishing vessel. Plaintiff brought suit after his boat caught fire and sank due to a defective hydraulic system. The initial owner of the boat had added equipment to the vessel before selling it to plaintiff. The Court permitted plaintiff to pursue a tort remedy against the vessel's builder and the hydraulic system's designer for the damage to the additional equipment.[5] *Id.* at 880–81, 117 S.Ct. 1783.

SPX counters that "any alleged damage to 'other components of the antenna system' constitutes an injury to the product itself, the FM antenna system supplied under the Contract." Reply Mem. Supp. Mot. Dismiss 5 ("Reply"). According to SPX, the FM antenna system would not function without all of the components that were damaged, so the FM antenna system represents an "integrated product." Reply 5. The integrated product rule states that different components integrated into one product do not constitute "other property" for the purposes of the economic loss doctrine. *See Sea–Land Serv., Inc. v. Gen. Elec. Co.*, 134 F.3d 149, 154 (3d Cir. 1998). Therefore, the other components of the antenna system were not "other property" for the purposes of the economic loss doctrine but rather part of the originally bargained-for product itself.

█ Here, there is a factual dispute as to what constitutes "other property" in terms of the damaged property and its alleged component parts. According to the contract's purchase order, WHYY bought an FM transmitter system from SPX. Yet at this stage of the litigation, it is impossible to distinguish between that transmitter system and the complaint's reference to a larger FM antenna system. Discovery is necessary to determine whether any lines can be drawn "between damage to 'the product' and damage to 'other property.'" *2–J Corp.*, 126 F.3d at 544. Therefore, I will deny without prejudice SPX's motion to dismiss NHIC's negligence claim under the economic loss doctrine.[6]

---

5. In *2–J Corp.*, the Third Circuit also rejected the argument that the economic loss doctrine applies "where the 'other property' damaged was always likely to have been injured upon the failure of 'the product' itself." 126 F.3d at 544 n. 4. But at this stage of the litigation, the threshold question is whether the damage was to the "product itself" or to "other prop-

erty." I do not need to address the issue of foreseeability and its application to the economic loss doctrine.

6. Federal courts within the Third Circuit have granted and denied 12(b)(6) motions to dismiss under the economic loss doctrine. *Compare Sovereign Bank v. BJ's Wholesale Club,*

### ii. Gist of the Action Doctrine

■ Pennsylvania courts also apply the gist of the action doctrine to complaints in which the "plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement." *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1238 (Pa.Super.2009) (citing *Pa. Mfrs.' Ass'n Ins. Co. v. L.B. Smith, Inc.*, 831 A.2d 1178, 1182 (Pa.Super.2003) (citation and quotation marks omitted)).[7] Under the "gist of the action" test, Pennsylvania intermediate courts have held that plaintiffs may not recast ordinary breach of contract claims into tort claims. *Bash v. Bell Tel. Co. of Pa.*, 411 Pa.Super. 347, 601 A.2d 825, 829 (1992). "The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Redevelopment Auth. v. Int'l Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581, 590 (1996). Therefore, the gist of the action is contractual if "the parties' obligations are defined by the terms of contracts, and not by the larger social policies embodied by the law of torts." *Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3d Cir.2001).

■ The gist of the action and the economic loss "doctrines are very closely related, and share the common purpose of maintaining the distinction between contract and tort law." *Wilmington Fin., Inc. v. Am. One Fin., Inc.*, No. 06–5559, 2007 WL 2221424, at *2 n. 1 (E.D.Pa. July 31, 2007). But the economic loss doctrine is more applicable to this case. The economic loss doctrine "developed in the context of ... products liability ... cases where one party contracts for a product from another party and the product malfunctions." *Bohler–Uddeholm Am., Inc.*, 247 F.3d at 104 n. 11. The gist of the action doctrine is more applicable to non-products liability cases in which the key question is the "duty owed between the parties," as opposed to the extent of the property damage. *See* Laura A. Wagner, Note, *The Economic Loss Doctrine: A Recommendation for the Supreme Court of Pennsylvania*, 72 U. Pitt. L. Rev. 825, 830 (2011). Here, WHYY signed a contract with SPX for the delivery and installation of a transmitter antenna that later malfunctioned. Therefore, this is contextually a products liability case and the gist of the action doctrine is inapplicable.

### B. Count II: Breach of Contract

NHIC alleges that SPX breached its contract by failing to properly install the defective transmitter antenna and failing to retain replacement parts for the anten-

---

*Inc.*, 533 F.3d 162, 177–78 (3d Cir.2008) (affirming trial court's dismissal of tort claim based on the economic loss doctrine) *with Tennis v. Ford Motor Co.*, 730 F.Supp.2d 437, 449 (W.D.Pa.2010) (denying defendant's motion to dismiss plaintiff's tort claims under the economic loss doctrine). The fact that this case is at the preliminary dismissal stage, as opposed to the summary judgment stage, is not dispositive. The specific circumstances of the case govern the decision. *See The Knit With v. Knitting Fever, Inc.*, Nos. 08–4221, 08–4775, 2009 WL 3427054, at *8 (E.D.Pa. Oct. 20, 2009).

7. Although the Pennsylvania Supreme Court has neither accepted nor rejected the doctrine, the Pennsylvania Superior Court and several U.S. District Courts have predicted that it would. *See Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F.Supp.2d 329, 340 (E.D.Pa.2003) (citing *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa.Super.2002); *Bash v. Bell Tel. Co. of Pa.*, 411 Pa.Super. 347, 601 A.2d 825 (1992); *Asbury Auto. Group LLC v. Chrysler Ins. Co.*, No. Civ. A. 01–3319, 2002 WL 15925, at *3 n. 3 (E.D.Pa. Jan. 7, 2002); *Caudill Seed & Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F.Supp.2d 826, 833 n. 11 (E.D.Pa.2000)).

na system for a 15–year period. SPX argues that NHIC's breach of contract claim should be dismissed due to (1) the terms of the contract's warranty and (2) the contract's limitation of liability provision. Mot. Dismiss 10–14.

■ Under Pennsylvania law, the intent of the parties to a written contract is contained in the writing itself. *See Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 613 (3d Cir.1995). So, as is the case here, when "the parties have reduced their agreement to writing, Pennsylvania courts presume that the parties' mutual intent can be ascertained by examining the writing." *Id.* Pennsylvania law requires the fact finder to interpret ambiguous contractual terms but the court to interpret unambiguous terms. Therefore, " 'as a preliminary matter, courts must determine as a matter of law which category written contract terms fall into-clear or ambiguous.' " *Am. Eagle Outfitters v. Lyle & Scott Ltd.,* 584 F.3d 575, 587 (3d Cir.2009) (citing *Duquesne Light Co.,* 66 F.3d at 613). Based on "Pennsylvania's presumption that the writing conveys the parties' intent, [a] contract will be found ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions." *Duquesne Light Co.,* 66 F.3d at 613 (citations omitted) (internal quotation marks omitted). But "[a] contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which,

from the nature of the language in general, its meaning depends." *Id.*

■ Here, the warranty and limitation of liability provisions are unambiguous.[8] The warranty explicitly states that SPX "warrants new equipment bearing its trademark, or trade name ... to be free from defects in material and workmanship at the time of delivery." Contract ¶ 9. SPX will repair or replace such new equipment "[f]or a period of (5) years from date of delivery." *Id.* According to the complaint, SPX delivered the antenna to WHYY "on or about April 8, 2004." Complaint ¶ 6. NHIC claims that SPX delivered a defective antenna. But the allegedly defective antenna did not malfunction until November 5, 2009—more than five years after delivery. Complaint ¶ 7. Therefore, WHYY was not subjected to a bargain that "failed of its essential purpose." Under the plain language of the warranty, SPX is not required to repair or replace the malfunctioned antenna. NHIC cannot circumvent the warranty by claiming that an antenna that worked for more than five years was actually defective upon delivery. Such claims would nullify all bargained-for warranties since purchasers could claim at any point in the future that they initially received defective products and therefore are entitled to repair and replacement costs. Even if the antenna malfunctioned within the five-year warranty window, the limitation of liability provi-

---

**8.** The integrated contract also contains a merger clause that states: "THIS AGREEMENT EXPRESSES THE ENTIRE INTENT AND UNDERSTANDING OF THE PARTIES AND THERE IS NO OTHER UNDERSTANDING, AGREEMENT, REPRESENTATION, OR WARRANTY, EXPRESS OR IMPLIED, STATUTORY, OR OTHERWISE." Contract ¶ 12(g). In the absence of ambiguity and in the presence of a merger clause, there is no need to entertain NHIC's request to look outside the four corners of the contract to ascer-

tain the parties' intent. *See Hullett v. Towers, Perrin, Forster & Crosby, Inc.,* 38 F.3d 107, 111 (3d Cir.1994) (citations omitted) (internal quotation marks omitted) ("Pennsylvania courts apply the 'plain meaning rule' of interpretation of contracts which assumes that the intent of the parties to an instrument is embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement.").

sion requires "any action for breach of contract [to] be commenced within one year after discovery of the cause of action has occurred." Contract ¶ 10. On November 5, 2009, the antenna malfunctioned. On October 21, 2011, nearly two years later, NHIC filed suit for breach of contract.

In its response to the motion to dismiss, NHIC attempts to cure the defective complaint by stating that the antenna "began to have problems as early as March 2009, and those problems then continued to worsen over time, ultimately completely manifesting themselves several months later." Opp'n Mot. Dismiss 7. But if the breach of contract can be traced to March 2009, NHIC needed to bring its claim by March 2010. And if NHIC did not ascertain the exact cause of the malfunction until late 2010 or early 2011, it should have stated so in its complaint.

 The warranty, however, provides for more than just the five-year repair period. It also contains a provision that states: "Replacement parts available for fifteen years." Contract ¶ 9. In the body of the complaint, NHIC alleges that SPX breached its contract with WHYY "for failing to maintain replacement parts for the antenna system for a 15–year period." Contract ¶ 17. SPX counters that the warranty's preceding sentence explains that "[t]his warranty shall not apply to equipment or parts not manufactured by [SPX] and the warranty liability of [SPX] for such equipment and parts is limited to the warranty extended to [SPX] by the supplier." Contract ¶ 9. SPX is correct that based on a reasonable reading of that provision, it did not need to make replacement parts manufactured by other companies available to WHYY. But SPX had to make *its* replacement parts available for WHYY to purchase for fifteen years. Therefore, discovery is necessary to determine what parts were needed when, as well as which parts were available following the antenna's malfunction. Based on the need for discovery, I will deny SPX's motion to dismiss without prejudice the breach of contract claim, only as it relates to the warranty's replacement parts provision.

## IV. CONCLUSION

For the reasons set forth above, SPX's motion to dismiss is denied without prejudice to raise the remaining issues again at a later stage in the litigation.

### ORDER

AND NOW, this 25th day of June 2012, for the reasons set forth in the accompanying memorandum, it is **ORDERED** that:

- Defendant's Motion to Dismiss (ECF No. 3) Counts I and II is **DENIED** without prejudice.

- Defendant may at a later stage in the litigation re-raise its argument against Plaintiff's Count I negligence claim only on the grounds of the economic loss doctrine.

- Plaintiff may proceed with its Count II breach of contract claim, only as it relates to the warranty's replacement parts provision.

It is **FURTHER ORDERED** that the stay of discovery (ECF No. 14) is lifted and that the parties shall proceed with discovery as outlined in the Court's Scheduling Order (ECF No. 11).